In re The **CHARTER COMPANY**, et al., Debtors.

**ROLLERT CO., INC., et al.,**

v.

**CHARTER CRUDE OIL COMPANY and Charter International Oil Company, et al.,**

v.

The **ROLLERT CO., INC., et al.**

Bankruptcy Nos. 5–84–00289 through 5–84–00332. Adv. No. 5–84–0827.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

April 16, 1985.

James Post, Smith & Hulsey, Jacksonville, Fla., and Joel Kay, Sheinfeld, Maley & Kay, Houston, Tex., for debtors.

W. Steve Smith, Woodard, Hall & Primm, P.C., Houston, Tex.; Thomas T. Rogers and Berry Spears, Lynch Chappell, Allday & Alsup, Austin, Tex.; and Sam Cobb, Jr., Tyler, Tex., for Texas Interest Owners.

Lawrence Handelsman, Stroock & Stroock & Lavan, New York City, for Creditors' Committee.

## MEMORANDUM OPINION

JOSEPH C. ELLIOTT, Bankruptcy Judge.

In this Chapter 11 case, one of the six Creditors' Committees filed a Motion to Intervene in an adversary proceeding initiated by the Debtors. The Committee sought to align itself with and to adopt the Debtors' Complaint to invalidate and avoid alleged secured liens claimed by a minority membership of the Committee. The matter was heard and an Order entered denying the Committee's Motion to Intervene as of right, but granting the Motion as permissive intervention under specified conditions. The following Memorandum Opinion fully sets forth the circumstances and underpinnings of the Court's ruling.

### FACTS

On April 20, 1984, The Charter Company and certain of its subsidiaries, including Charter Crude Oil Company and Charter International Oil Company (collectively "CCOC"), filed Petitions for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division ("Jacksonville Court"). Prior to the filing of the bankruptcy petition, CCOC as Florida corporations qualified to do business in the State of Texas engaged in the purchase of crude oil produced from certain oil wells located in the State of Texas.

As a result of CCOC's crude oil purchases made prior to April 20, 1984, various owners of oil interests produced from certain leases located in Texas ("Texas Interest Owners") claimed to be secured creditors of CCOC. The Texas Interest Owners claimed secured status to the oil produced and the proceeds from its sale under TEX. BUS. & COM.CODE ANN. Section 9.319 (Tex.U.C.C.) (Vernon Supp.1984) ("Section 9.319"). That Section grants a consensual security interest and a statutory lien in oil and gas production sold to the first purchaser and, in the event of a sale in the ordinary course of business, in the proceeds therefrom.

Subsequent to April 20, 1984, the Texas Interest Owners commenced adversary proceedings or moved to intervene in pending proceedings to enforce their alleged liens (aggregating an amount of more than sixteen million dollars), to prohibit use of cash and other collateral; to compel accounting and for adequate protection; and to assert their secured status under Section 9.319. On or about July 23, 1984, CCOC commenced an adversary proceeding seeking declaratory relief that, *inter alia*, the alleged claims of the Texas Interest Owners against CCOC were unsecured and attempting to set aside the liens.

On July 11, 1984, by Order of the Jacksonville Court, the Committee of Oil Interest Owners ("Committee") was designated as one of four creditors' committees. The Committee was composed of financial institutions, major oil companies and independent oil operators and interest owners, including the Texas Interest Owners. From the outset, the Texas Interest Owners claimed secured status by virtue of Section 9.319, whereas the remaining members were unsecured creditors. As a result, the Committee was composed of members with inherently conflicting interests—a majority of the membership being unsecured credi-

tors and a minority claiming secured status.

By Order dated November 13, 1984, the Jacksonville Court (Proctor, J.) consolidated and transferred the Adversary proceedings to the United States Bankruptcy Court for the Western District of Texas, San Antonio Division ("San Antonio Court").

Prior to the consolidation and transfer, a majority of the Committee voted on November 9, 1984 to intervene in the adversary proceedings to "keep abreast of the proceedings and to enable it to examine the extent, validity and enforceability of the claims against CCOC." The Texas Interest Owners voted against the Motion to Intervene. The Motion to Intervene was filed in the San Antonio Court on January 7, 1985. The Committee sought to challenge the constitutionality, applicability and enforceability of Section 9.319 and proposed to align itself with and adopt the Debtor CCOC's Complaint to avoid the security interests granted under Texas law. The Committee based its right to intervene on 11 U.S.C. Section 1109(b), Bankruptcy Rule 7024, and Federal Rule of Civil Procedure 24(a)(1) as Intervention of Right. Alternatively, the Committee submitted that intervention was appropriate under Federal Rule of Civil Procedure 24(b)(2) as a Permissive Intervention.

Various Texas Interest Owners filed objections to the Committee's Motion to Intervene. The opposition contended that the majority vote to intervene was in opposition to the interests of a segment of the Committee's constituency; that the Committee's right to intervene was not an absolute Intervention of Right under Federal Rule of Civil Procedure 24(a); and that discretionary Permissive Intervention under Federal Rule of Civil Procedure 24(b) was both unnecessary and unwarranted.

## ISSUE

The issue before the Court is whether an unsecured Creditors' Committee in a bankruptcy reorganization has the right to intervene in an adversary proceeding initiated by the Debtor to invalidate and set aside alleged secured liens claimed by a minority membership of the Creditors' Committee.

## DISCUSSION

The Committee bases its right to intervene in the adversary proceeding on Bankruptcy Rule 7024, Federal Rule of Civil Procedure 24(a)(1) and 11 U.S.C. Section 1109(b). Alternatively, the Committee submits that intervention is appropriate under Bankruptcy Rule 7024 and Federal Rule of Civil Procedure 24(b)(2).

## INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(1)

The Committee first asserts that it has an unconditional right to intervene under Federal Rule of Civil Procedure 24(a)(1) grounded upon 11 U.S.C. Section 1109(b). Federal Rule of Civil Procedure 24(a)(1) provides that Intervention of Right shall be permitted "when a statute of the United States confers an unconditional right to intervene." In pertinent part, Section 1109(b) provides that "... a creditors' committee ... may raise and may appear and be heard on any issue in a case under this chapter."

The Committee relies extensively on *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983) to support its stance that the right to intervene in the adversary proceeding is unconditional under 11 U.S.C. Section 1109(b). While Section 1109(b) states that a Creditors' Committee may appear in a *case* under Chapter 11 of the Code, it does not state that a Creditors' Committee may intervene in a *proceeding* arising in or related to a case. *See In re George Rodman, Inc.*, 33 B.R. 348, 349 (Bankr.W.D.Okla. 1983). The *Marin* Court's grant of a Committee's unconditional right to intervene in an adversary proceeding turned on a broad definition of "case" under Section 1109(b) so as to include an "adversary proceeding". *See Marin*, 689 F.2d at 450–51. The *Marin* Court reasoned that to interpret "case" to

exclude "adversary proceeding" "would drastically restrict the rights of parties to appear and be heard". *Id.* at 450. However, even if Section 1109(b) were narrowly confined to "case" envisioning only general administration of a Chapter 11 proceeding leading up to final confirmation of a plan of reorganization by the Bankruptcy Court, a party in interest may still seek intervention of right under Federal Rule of Civil Procedure 24(a)(2) or permissive intervention under Federal Rule of Civil Procedure 24(b)(1) or (2). Both sections are broad enough to encompass a party's earnest Motion to Intervene in an adversary proceeding without dependence upon Section 1109(b).

As the *Marin* Court noted, the Bankruptcy Code does not mention or define "adversary proceeding" nor does it draw distinctions between "case" and "adversary proceeding". *See Id.* at 450. However, the Rules of Bankruptcy Procedure pursuant to 28 U.S.C. 2071, which became effective post-*Marin* on August 1, 1983, not only define "adversary proceeding" under Bankruptcy Rule 7001, but also establish the proper procedural rule under Bankruptcy Rule 7024 governing intervention in an adversary proceeding. The Court need not address the exact scope of the term "adversary proceeding" under Rule 7001 since it is conceded that the action in which the Committee seeks to intervene is a proper adversary proceeding. Bankruptcy Rule 7024 governing intervention simply applies Federal Rule of Civil Procedure 24 to adversary proceedings. The Advisory Committee Note following Bankruptcy Rule 7024 provides:

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a *case* under the Code is governed by Rule 2018 and intervention in an *adversary proceeding* is governed by this rule. Intervention in a case and intervention in an adversary proceeding must be sought separately. (Emphasis added)

▪ ، Thus, while the Bankruptcy Code neither defines nor distinguishes "adversary proceeding", the Rules of Bankruptcy Procedure distinguish the two terms by providing separate rules governing their intervention. Hence, intervention in an adversary proceeding is governed by Bankruptcy Rule 7024 and intervention in a case under the Code is governed by Bankruptcy Rule 2018.

Under Bankruptcy Rule 2018 governing intervention in a case under the Code, the Advisory Committee Note provides that Bankruptcy Rule 2018 implements Section 1109 of the Code. It is significant to note that no such implementation of Section 1109 is afforded under Bankruptcy Rule 7024 which applies Federal Rule of Civil Procedure 24 to adversary proceedings.

Therefore, *Marin* can be distinguished by a subsequent change in the Rules of Bankruptcy Procedure. Only Bankruptcy Rule 2018 implements Section 1109 and Bankruptcy Rule 2018 is restricted to a "case" under the Code. It thus appears that when Section 1109(b) speaks of a "case", it does not encompass an adversary proceeding. Hence, the Committee's reliance on intervention of right under Federal Rule of Civil Procedure 24(a)(1) by virtue of 11 U.S.C. Section 1109(b) is unfounded. 11 U.S.C. Section 1109(b) is not a statute granting the Committee an unconditional right to intervene in an adversary proceeding. *See Rodman,* 33 B.R. at 350; *see also In re Amarex, Inc.,* 36 B.R. 59 (Bankr.W. D.Okla.1984) (Section 1109(b) permits intervention in a case, but not an adversary proceeding); *In re Segarra,* 14 B.R. 870 (Bankr.D.P.R.1981) (Section 1109(b) applies to cases and not to proceedings).

Additionally, *Marin* and its progeny allowing unconditional intervention by Creditors' Committees under Section 1109(b) are situations clearly distinguishable from this proceeding. All of the cases cited by the Committee in support of its Motion to Intervene are cases in which the Creditors' Committee seeking intervention was a Committee composed of similarly aligned

interests.[1] In this proceeding, the Committee is composed of members diametrically opposed on the threshold issue to determine the constitutionality, applicability and enforceability of TEX.BUS & COM.CODE ANN. Section 9.319 (Tex.U.S.C.) (Vernon Supp.1984). To date, no Court has allowed unconditional intervention by a Creditors' Committee under Federal Rule of Civil Procedure 24(a) in a proceeding that is in direct opposition to the Committee's minority constituency.

In view of the foregoing, the Court finds that the Committee does not have an intervention of right under Federal Rule of Civil Procedure 24(a)(1).

## INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)

Although the Committee does not specifically rely on Federal Rule of Civil Procedure 24(a)(2) in its Motion to Intervene or its Memorandum of Law in Support of its Motion to Intervene, the Committee does so by reference in claiming "a significant interest in the outcome of this litigation." The Committee of Oil Interest Claimants' Reply to Memorandum of Law to the Objections of the Coffman and Guenther Groups, page 4. Additionally, the Committee, in testimony before the Court on March 20, 1985 in the proceeding to consider its Motion to Intervene, made reference to the fact that its interests might not be adequately represented if CCOC did not go forward with its adversary proceeding to declare unconstitutional and to set aside the Texas Interest Owners alleged secured liens.

Federal Rule of Civil Procedure 24(a)(2) permits intervention of right "when the applicant claims an interest relating to the property ... which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

■ Resolution of the issues raised by the adversary proceedings to determine the constitutionality, applicability and enforceability of section 9.319 and to avoid the Texas Interest Owners alleged secured liens pursuant to 11 U.S.C. Sections 544 and 545 will most assuredly affect the interests of the Committee. As an Official Creditors' Committee, one of its primary goals is to preserve the Debtors' estate. If the Texas Interest Owners (with alleged claims aggregating more than sixteen million dollars) are found to be secured, the Debtors' estate will be correspondingly depleted and the assets available to members of the Committee will be reduced.

■ However, claiming an interest in the property which is the subject of the action is not sufficient, in and of itself, to permit intervention of right. Under Federal Rule of Civil Procedure 24(a)(2), the intervenor-applicant's interest cannot be adequately represented by existing parties.[2]

■ The Committee has aligned itself with and adopted CCOC's Complaint as its proposed pleading in the adversary proceeding instituted by CCOC. CCOC's indi-

1. *See In Re Marin,* 689 F.2d (Chapter 11 Creditors' Committee has an absolute right to intervene in adversary proceedings); *In re D.H. Sharrer & Son, Inc.,* 44 B.R. 976 (Bankr.M.D.Pa. 1984) (Section 1109(b) is proper vehicle for mandatory intervention); *In re Overmyer,* 30 B.R. 123 (Bankr.S.D.N.Y.1983) (Creditors' Committee has absolute right to intervene as party in interest under Section 1109(b)); *In re Cloud Nine, Ltd.,* 3 B.R. 199 (Bankr.D.N.M.1980) (intervenors have absolute right to intervene when no new issues raised).

2. *See Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961)

(intervention as matter of right presupposes intervenor's interests are or may not be adequately represented by existing parties); *National Farm Lines v. I.C.C.,* 564 F.2d 381 (10th Cir. 1977) (if interest of applicant for intervention of right adequately represented, party cannot intervene); *Edmonson v. Nebraska ex rel. Meyer,* 383 F.2d 123 (8th Cir.1967) (inadequacy of representation necessary element to be proved by party seeking to intervene as matter of right); *cf. Frank J. Delmont Agency, Inc. v. Graff,* 55 F.R.D. 266 (D.Minn.1972) (inadequacy of representation need not be shown to a certainty to warrant intervention as of right).

cation that it will not oppose and that it, in fact, supports the Committee's Motion to Intervene is insufficient to set aside the obvious fact that CCOC's and the Committee's interests are nearly identical. Hence, for purposes of Federal Rule of Civil Procedure 24(a)(2), the Committee's interests are adequately represented by CCOC as an existing party to the action.

The Committee suggests that its participation may assist the Court in deciding an important issue of first impression. While the Court welcomes the perspective of a third party such as the Committee, the Court cannot permit the Committee's intervention as a matter of right because the Court does not foresee that the Committee would add some necessary element to the proceedings which would not be covered by the existing parties. *See Blake v. Pallan*, 554 F.2d 947 (9th Cir.1977).

■ Even though the Committee has testified that its interests might not be adequately represented if CCOC does not go forward in the action, the Court must determine adequacy of representation at the time intervention is sought. *See Pierson v. United States*, 71 F.R.D. 75 (D.Del.1976).

In view of the foregoing, the Court finds that the Committee does not have an intervention of right under Federal Rule of Civil Procedure 24(a)(2).

### INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)(2)

■ Federal Rule of Civil Procedure 24(b) governing permissive intervention is to be given a liberal construction, although the Court in the sound exercise of its discretion must make a thoughtful determination and must consider the potential adverse impact on the original parties in its decision to allow or deny intervention. *See United States v. Grand Trunk Western Railroad Co.*, 95 F.R.D. 463, 467 (W.D. Mich.1980). However, liberality "does not equate with rights of indiscriminate intervention". *Stadin v. Union Electric Co.*, 309 F.2d 912, 918 (8th Cir.), *cert. denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1962).

In pertinent part, Federal Rule of Civil Procedure 24(b)(2) provides that intervention is permissible "when an applicant's claim or defense and the main action have a question of law or fact in common ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Hence, if there is a common question of law or fact, the requirement of the rule has been met and then it is within the Court's discretion to allow or refuse intervention.

In the present proceeding, the Committee in seeking intervention has aligned itself with and adopted the Complaint of CCOC as its proposed pleading. It would be beyond question, then, that there are common legal and factual questions between the Applicant-Committee and the main action instituted by CCOC.

It is then left to the exercise of the Court's discretion to allow intervention. The principal consideration is whether such intervention will "unduly delay or prejudice the adjudication of the rights of the original parties". It has been said that this language is "a caution to the Court so that in its zeal to avoid a multiplicity of suits it will not hamper or vex the claims of the original parties". *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 207 F.Supp. 252, 257 (D.C.Ill.1962), *aff'd*, 315 F.2d 564 (7th Cir.1963).

■ While additional parties always take additional time, the Court should balance whatever delay against the advantages of disposition of all claims or defenses in one proceeding. *See Philadelphia Elec. Co. v. Westinghouse Elec. Corp.*, 308 F.2d 856, 860 (3d Cir.), *cert. denied*, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1962); *Pace v. First Nat'l. Bank of Osawatomie*, 277 F.Supp. 19 (D.C.Kan.1965), *aff'd*, 404 F.2d 52 (16th Cir.1968). The Committee proposes to raise no new issues, no discovery has been taken, and the proceeding has been firmly set for determination in May, 1985. The Court finds that intervention by the

Committee will not unduly delay the proceedings.

 In examining whether or not intervention will prejudice the rights of the original parties, the Court cannot overlook the Committee's alignment with CCOC to defeat the Texas statute which allows the Committee's minority members, the Texas Interest Owners, to claim its secured status. The Committee's action would serve to contravene and injure the rights and interests of some of the members which serve on the Committee. The Committee, through intervention, would be acting officially for all its members, thus forcing the minority Texas Interest Owners to participate on opposing fronts—as a defendant against CCOC's claim and as a plaintiff through intervention by the Committee of which it is a member.

Since the Court has discretion to deny intervention altogether under Federal Rule of Civil Procedure 24(b), it may also impose conditions under which it will allow the applicant to become a party. *See* C. Wright & A. Miller, *Federal Practice and Procedure,* Section 1913 at 558, Section 1922 at 623 (1972). In view of the particular equities and unusual circumstances surrounding the Committee's Motion to Intervene, the Court could not grant the Committee's Motion without offending its judicial conscience unless intervention were conditioned to protect the rights and interests of the Committee's minority membership.

In light of the foregoing, the Court finds that the Committee's Motion to Intervene under Federal Rule of Civil Procedure 24(b)(2) should be granted under the following conditions:

1. Intervention is limited to the adversary proceeding to determine the constitutionality, applicability and enforceability of TEX.BUS. & COM. CODE ANN. Section 9.319 (Tex.U. C.C.) (Vernon Supp.1984).

2. Costs and attorney's fees incurred by the Committee in the adversary proceeding are to be borne by those members of the Committee who, on November 9, 1984, voted in support of the Motion to Intervene.

IT IS SO ORDERED.