### In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.

### Bankruptcy Nos. 89 B 10448 (BRL) and 89 B 10449 (BRL).

United States Bankruptcy Court, S.D. New York.

July 6, 1989.

See also, Bkrtcy., 100 B.R. 670, Bkrtcy., 103 B.R. 501.

Weil, Gotshal & Manges, New York City (Harvey R. Miller, Zack A. Clement, of counsel), for debtors.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Joel B. Zweibel, Adam Harris, of counsel), for Official Committee of Unsecured Creditors.

Lobel, Novins, Lamont & Flug, Washington, D.C. by James F. Flug, for Consumers Union of U.S., Inc.

## DECISION ON MOTION OF CONSUMERS UNION FOR ORDER APPROVING INDIVIDUAL TRAVEL REFUND PROCEDURE

BURTON R. LIFLAND, Chief Judge.

### RELIEF REQUESTED

Consumers Union, on behalf of those for whom it is acting as attorney-in-fact pursuant to general powers of attorney filed with this Court and on behalf of those individuals described in Consumers Union's Motion, as party in interest in this case, moves pursuant to 11 U.S.C. §§ 105 and 363, that this Court approve an order compelling Eastern to adopt an Individual Traveler Refund Procedure.

### BACKGROUND

On March 9, 1989, Eastern Airline ("Eastern") and its affiliate Ionosphere Clubs, Inc. ("Ionosphere") commenced a case for relief under Chapter 11 of the Bankruptcy Code (the "Code"). These Chapter 11 cases were consolidated for procedural purposes only. Eastern and Ionosphere continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Code.

Eastern is a certificated air carrier engaged primarily in the transportation of persons and property. Prior to March 4, 1989, Eastern operated approximately 250 aircraft, made 1,100 average daily departures, transported daily an average of 80,000 passengers, and employed approximately 30,000 employees. At 12:01 a.m. on March 4, 1989, Eastern employees represented by International Association of Machinists, (the "IAM"), struck Eastern. In sympathy with the IAM, both the Air Line Pilots Association ("ALPA") and the Transport Workers Union of America (the "TWU") also struck and consequently, Eastern's flight operations were grounded almost entirely. Five days later, Eastern filed for relief under Chapter 11 of the Code. Eastern has since resumed certain operations and has stated its intentions to steadily increase its operations while in Chapter 11 proceedings. *Response of Eastern Air Lines, Inc.*, at 2–3.

On March 14, 1989, Eastern filed a motion for and obtained the Order Authorizing Eastern's Ticket Holder Relief Program (the "Ticketholder Relief Order"). The Ticketholder Relief Order essentially provides that Eastern's pre-petition ticket and coupon holders would be permitted to exchange their pre-petition tickets and coupons for post-petition transportation services. Eastern's business justification for the Ticketholder Relief Program was that Eastern hoped to resume flight operations and provide travel services to as many pre-petition ticketholders as was feasible as soon as possible, rather than paying them refunds. In fact, Eastern's underlying rationale for initiating the Ticketholder Relief Program was that it involved virtually no use of Eastern's cash resources. *Response of Eastern*, at ¶ 5.

Additionally, Eastern and the American Society for Travel Agents, ("ASTA"), announced that they had reached agreement on a proposal for a Travel Agent Reimbursement Program. Eastern seeks approval of this agreement in its motion of May 9, 1989, which is also before this Court today. Eastern alleges in its application that it has entered into this agreement with ASTA because it believes it is necessary to retain the support of travel agents, the source of a substantial portion of Eastern's operating revenues and sales. Accordingly, Eastern asserts that the Program is in the best interests of Eastern's estate, creditors and interest holders and should be approved. *Eastern's Motion For Approval of Travel Agents Reimbursement Pro-*

*gram,* at 7. Furthermore, it is the understanding of this Court that Eastern's Motion, with certain modifications, is currently supported by both the Examiner and the Official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee"). *See,* Transcript of Hearing of July 5, 1989.

Consumers Union ("CU"), while not objecting to the thrust of the Eastern motion for the Travel Agent's Reimbursement Program has moved for an order of this Court approving the adoption of its own Refund Procedure, (the "Procedure"). The Procedure would require Eastern to make immediate refunds to individuals (as opposed to businesses) who hold Eastern tickets or other service obligations, obtained other than by credit card purchases, before the Chapter 11 filing, for services which were not available when scheduled. Although CU has failed to quantify the exact amount the Procedure would cost the estate, it alleges that the Procedure should cost approximately $20 million.

CU asserts that it is a nonprofit organization established in 1936 to provide consumers with information and advice on goods, services, health and personal finance. Its research and reporting on consumer issues (including a 1988 study of the airline industry) is made available every month to over 4 million subscribers through its publication of the magazine, *Consumer Reports,* and to the public press. CU asserts that its consumer advocacy activities have included participation in proceedings before administrative agencies, courts and Congress, including some involving airline issues unrelated to this bankruptcy proceeding. *See, CU's Reply Memorandum* at Exhibit A. CU also alleges that it has been granted formal intervenor status in a wide variety of cases, and has been granted payment of fees and expenses in some of them. *Motion of Consumers Union* at 3.

Although Eastern has already instituted a different ticket holder's compensation plan, CU argues that this plan inadequately protects the interests of many ticket holders. Thus, CU asserts that it has made its motion because no member of the existing creditors' committee represents the interests of the flying public. *Motion of Consumers Union,* at 5–6.

It should be noted that CU has made a number of other motions and appearances in the case. On the same day that CU filed this motion, it also made a motion for this Court to accelerate consideration of the pending motion of the Airline Pilots Association ("ALPA"), a completely unrelated organization, for the appointment of a trustee, pursuant to 11 U.S.C. § 1104. *See, Motion of Consumers Union* at 2–3. This motion is wholly gratuitous.

Additionally, CU filed its papers in Support of ASTA's Motion for Reconsideration of Order Approving Eastern Airlines Ticketholder Relief Program in which CU sought immediate refunds for non-credit card purchasers of tickets on cancelled Eastern flights. As stated previously, CU has filed papers objecting to Eastern's motion for the approval of a Travel Agent's Reimbursement Program. Finally, early in this case, CU filed a "Notice Of Filing With Trustee" requesting that the United States Trustee (1) appoint an additional committee composed of CU and other entities representing the travelling Public, *i.e.* the "Travelling Public Committee;" or (2) add CU to the existing Unsecured Creditors Committee, "with the understanding that its cost of participation, including the professional fees of its designated representative, be deemed an administrative expense of the Committee ..." or (3) add CU to the existing Unsecured Creditors Committee, "with a preliminary determination by the court under § 503(b)(4) that CU's contribution to the proceedings will be such that the professional fees and costs entailed in its participation should initially be borne by the debtor on a current basis...." The United States Trustee denied CU's request.

CU claims that it is a party in interest under § 1109(b) of the Code and it is also acting as attorney in fact pursuant to Bankruptcy Rule 2019. Finally it asserts that even if it is not a party in interest, it is entitled to intervenor status under Bankruptcy Rule 2018. CU filed a statement setting forth its interest, listing eight

names of individuals who have submitted and completed official form No. 17 pursuant to Bankruptcy Rule 2019. CU claims that it acts on behalf of these eight individuals, CU members and subscribers, others who have orally requested CU's assistance in this case, and, in general, and not as a designated class, others similarly situated who hold prepaid Eastern tickets or other Eastern travel or service rights or credits. In addition, it asserts that it is a creditor in its own right because an employee of CU has accumulated service obligations (frequent flyer miles) against Eastern and these obligations would allegedly be used for corporate purposes by CU.

In contrast, Eastern asserts that CU is an intermeddler who lacks standing to bring forth this motion on behalf of ticket holders. Furthermore, Eastern questions Counsel's to CU motivation in involving CU in this bankruptcy proceeding. In that regard, Eastern maintains that CU only became involved in this case after being contacted by the firm of Lobel, Novins, Lamont & Flug (hereinafter "Counsel"). Thus, Eastern states that Counsel "has agreed to represent CU, without any obligation on the part of CU for either fees or costs, apparently intending to look to Eastern's estate for payment of its fees, and indeed, *even for recovery of its costs.*" *Eastern's Response* at ¶ 8. (emphasis in original.) Furthermore, Eastern asserts that subsequently, CU undertook and solicited over 40,000 individuals seeking the opportunity to represent those individuals as to their pre-petition claims against Eastern. Consequently, *eight individuals, including an employee of CU* responded to the solicitation by giving CU powers of attorney to act on their behalf. Therefore, Eastern argues that "CU itself lacks sufficient direct pecuniary or equity interest in Eastern, to be entitled to party in interest status." *Id* at ¶ 11. Additionally, Eastern contends that CU has not satisfied the requirements necessary to act as attorney-in-fact. Finally, Eastern asserts that intervention in this case by CU would serve no useful purpose. In this regard, Eastern argues that "[n]ot only would participation by CU add to the substantial expense incurred by Eastern in this case but would also add to the time necessary to prosecute the case by multiplying unnecessary pleadings that obscure issues crucial to a speedy and efficient reorganization." *Id.* at ¶ 13. Finally, Eastern argues that CU's motion must be denied on its merits because "there is no legally acceptable business justification for such a program at this juncture in the Chapter 11 case." *Id.* at ¶ 6.

Additionally, the Unsecured Creditors' Committee has objected to CU's motion because, *inter alia,* CU has no standing to prosecute the motion; CU is not a creditor or equity security holder of either of the Debtors, and thus it has no pecuniary interest in this Chapter 11 case; and CU has no standing to represent traveler creditors as a class. *See, Objection of Unsecured Creditors' Committee,* at 1–2. Finally, the Unsecured Creditors' Committee maintain that the motion is premature and is not authorized by either the Bankruptcy Code or Rules. *Id.* at 2.

## ISSUES

Thus, before this Court can reach the merits of CU's Motion it must first determine the following issues:

1. Whether Consumers Union is a party in interest pursuant to § 1109 of the Bankruptcy Code.

2. Whether Consumers Union has fulfilled Bankruptcy Rule 2019's requirements for power of attorney so that it has standing as an authorized agent to represent the flying public.

3. Whether Consumers Union has a right of intervention under Bankruptcy Rule 2018 and the Federal Rules of Civil Procedure Rule 24.

## DISCUSSION

1. *CU is not a party in interest, as defined by section 1109 of the Bankruptcy Code.*

CU asserts that it is acting under § 1109 of the Code, which governs the right to be heard and provides for who may be considered a party in interest. Section 1109(b) provides as follows:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

■ CU correctly points out that § 1109(b)'s list of who may be a party in interest is not exclusive. Section 102(3) of the Code provides that the word "including" is not limiting. Consequently, the appearance of the word "including" in § 1109(b) renders the list of who may be a party in interest as not all inclusive. *In re Amatex, Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985). *See also, In re Johns–Manville Corp.*, 36 B.R. 743, 748 (Bankr.S.D.N.Y. 1984); *aff'd*, 52 B.R. 940 (S.D.N.Y.1985). Thus, CU argues that § 1109(b)'s language does not preclude it from being a party in interest in this case.

However, the term "party in interest" is not defined by either the Bankruptcy Rules or the Code. Consequently, its meaning must be construed in light of the Bankruptcy Code and is determined on an *ad hoc* basis. *In re Penn–Dixie Industries, Inc.*, 9 B.R. 936, 941, 943 (Bankr.S.D.N.Y.1981); *In re Johns–Manville Corp.*, 36 B.R. at 747; *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir.1983). The legislative history indicates that Congress sought to encourage and promote greater participation in reorganization cases. *In re Amatex Corp.*, 755 F.2d at 1042. As a result, § 1109(b) ought to be construed broadly; an individual has the absolute right to be heard and this ensures fair representation of all claimants. *In re Public Service of New Hampshire*, 88 B.R. 546, 550–51 (Bankr.D. N.H.1988); *In re Johns–Manville Corp.*, 36 B.R. 743, 747 (Bankr.S.D.N.Y.1984); *In re Marin Motor Oil, Inc.*, 689 F.2d 445, 453 (3d Cir.1982); *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). Thus, CU argues that § 1109(b) authorizes a very broad and elastic interpretation as to those entities entitled to party in interest status.

■ Although § 1109(b) ought to be construed broadly, if a party is not affected by the reorganization process it should not be considered a party in interest. Only those parties sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard. *In re Amatex Corp.*, 755 F.2d at 1042–43; *In re Public Service of New Hampshire*, 88 B.R. at 551. The bankruptcy court must determine a party's status on a case by case basis to see if this party has a sufficient stake in the proceeding which would require representation. When interpreting the meaning of the Code, bankruptcy courts are governed by its purposes. Bankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute. As a result, one purpose of the Code is to convert the bankrupt's estate into cash and distribute it among creditors. *In re Comcoach Corp.*, 698 F.2d at 573 (citing *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913); *In re Thompson's Estate*, 192 F.2d 451, 453 (3d Cir.1951)). The term party in interest should be interpreted in light of this purpose. Consequently the party requesting standing must either be a creditor of a debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate. *In re Comcoach Corp.*, 698 F.2d at 573. This Court is not persuaded by CU's assertion that due to its [self proclaimed] status as protector of consumers, it has the unique power to step into the shoes of the consumer ticket holders, and receive their status as a party in interest. The real party in interest is the party that has the legal right which is sought to be enforced or is the party entitled to bring suit. *In re Comcoach Corp.*, 698 F.2d at 574. In other words, a creditor is the individual entitled to bring suit. Section 101(9) of the Code defines a creditor as an entity that has a claim against either the debtor or the estate, arising at certain specified times. A claim under § 101(4) of the Code is defined as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisput-

ed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

In *Comcoach,* the Court held that a bank-mortgagee on property leased to the bankrupt was not a party in interest. It had "no right to payment from the [debtor], since the [debtor had] no obligation on the [bank's claim] and the [debtor's] duty to pay rent on its lease [ran only to the lessor], not the Bank. Moreover, the Bank lack[ed] any right to equitable relief against the [debtor] arising out of a breach of performance giving rise to a right to payment." *In re Comcoach Corp.,* 698 F.2d at 574.

Similarly, CU, as an organization, also lacks any right to payment. CU, by its own admission, has not purchased any airline tickets, did not lend any money or assets to the estate, nor does it have an equitable or contingent claim. The reorganization does not affect any vital interest of CU. It has no direct financial relationship to Eastern and has no right to direct reimbursement for airline tickets.

Furthermore, CU's allegations that it is a beneficial holder of a claim is disingenuous at best. CU alleges that an employee has accumulated service obligations (*i.e.* frequent flyer miles) against Eastern as a result of travel on behalf of CU, which obligations will be used for corporate purposes by CU. However, if this claim exists, then it exists in the name of the individual, not CU. To allow CU party in interest status based on such a tenuous connection to this bankruptcy proceeding is unfounded. CU will not be affected by this reorganization and thus is not a party in interest.

Additionally, CU relying on the case of *In re Johns–Manville Corp., supra,* asserts that its position is analogous to the Representative of Future Tort Victims. CU argues that just as potential tort claimants in *Manville* received standing to assert their interests through the appointment of a Legal Representative, CU should also receive standing. The *Manville* court noted that

[a]ny plan not dealing with [the interests of potential asbestos claimants] precludes a meaningful and effective reorganization and thus inures to the detriment of the reorganization.... If they are denied standing as parties in interest, they will be denied all opportunity either to help design the ship that sails away from these reorganization proceedings with their cargo on board or to assert their interests during a pre-launching distribution.

*Id.* at 749.

This Court however finds that CU's analogy is unpersuasive. Ticketholders of Eastern are distinct from potential tort claimants. The potential asbestos claimants were unable to assert their interests during the reorganization proceedings because victims of asbestos related disease may not know for many years that they are, in fact, claimants because of the latency period involved; thus, potential asbestos claimants were uncertain as to whether they had a claim against the estate prior to the filing of the plan. In contrast, ticketholders know or should know that they have a claim against Eastern for an unused ticket and thus have the ability to assert that right during the reorganization proceeding. Therefore, the need for a "Legal Representative" in the case *sub judice* for these known claimants is clearly less compelling than in *Manville.*

Moreover, it is important that a bankruptcy court is not too facile in granting applications for standing. Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization. *In re Public Service of New Hampshire,* 88 B.R. at 554. Even if CU is somehow affected by the reorganization, this Court must also determine whether CU's intervention causes undue delay or preju-

dice the adjudication of the rights of the original parties. *In re Public Service of New Hampshire*, 88 B.R. at 548. Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide "reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently". *In re Barrick Group, Inc.*, 98 B.R. 133 (Bankr.D.Conn.1989) (quoting *In re Flamini*, 19 B.R. 303, 307–08 (Bankr.E. D.Mich.1982). Additionally, granting party in interest status to a non-creditor would saddle this estate with the burden of paying CU's attorneys fees, costs and expenses. Such an additional burden is unwarranted in a case which already has spiraling professional expenses.

The case of *In re Public Service of New Hampshire, supra*, is factually similar in that the Consumer Advocate and the Business Industry Association, (the "BIA") requested full party in interest status and/or general intervenor status. *In re Public Service of New Hampshire*, 88 B.R. at 549. Despite the fact that Consumers Advocate, (just as Consumers Union asserts) is an established organization devised to protect the rights of consumers, and has successfully fought for consumers in court rooms, legislative, and administrative hearing settings, Consumer's Advocate's expertise did not warrant that it receive general party in interest status. "[C]ourts generally try to avoid deciding party in interest and intervention questions in the abstract, i.e., in the absence of a specific context within the reorganization proceeding...." *Id.* at 554.

Similarly, in this case, CU's self-proclaimed expertise does not warrant its intervention in these Chapter 11 proceedings. The Unsecured Creditor's Committee, the Examiner and the Debtor have each engaged the services of their own airline industry experts and thus there is no need for expensive duplication of services in this case. Additionally, unlike the consumer advocate entity in *Public Service Co. of New Hampshire*, 88 B.R. at 549, CU was not specifically created for the purpose of representing a special interest group such as the "flying public" and has provided no evidence qualifying itself as an "expert" in litigation matters dealing with interests of the "flying public". Moreover, as dealt with more fully below, CU has not demonstrated that the "flying public's" interests are not being adequately represented by the other professionals in this case.

2. *CU did not fulfill the requirements of Bankruptcy Rule 2019.*

■ CU filed its motion on behalf of all ticketholders who will be compensated through the Eastern Program. CU alleges that it is properly before the Court and that it has completed Bankruptcy Rule 2019's requirements which would permit CU to file a motion on behalf of ticketholders. However, CU's statements are not compelling. CU has not complied with Bankruptcy Rule 2019.[1] To be an authorized agent of a multiple grouping, Bankruptcy Rule 2019 requires that every person purporting to represent more than one creditor in a Chapter 11 reorganization case "file a verified statement setting forth

---

1. Bankruptcy Rule 2019 provides in pertinent part:

every entity or committee representing more than one creditor or equity security holder and, unless otherwise directed by the court, every indenture trustee, shall file a verified statement with the clerk setting forth

(1) the name and address of the creditor or equity security holder;

(2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition;

(3) a recital of the pertinent facts and circumstances in connection with the employment of

the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and

(4) ... the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof. The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders....

the names and addresses of the creditors, the nature and amount of the claims and the relevant facts and circumstances surrounding the employment of the 'agent' ". *In re Electronic Theatre,* 57 B.R. 147, 148–49 (Bankr.N.D.Ohio 1986); *see also, In re Baldwin–United Corp.,* 52 B.R. 146, 148 (Bankr.S.D.Ohio 1985), *In re Great Western Cities, Inc.,* 88 B.R. 109, 113 n. 2 (Bankr.N.D.Tex.1988), *In re Continental Airlines,* 64 B.R. 874, 880 (Bankr.S.D.Tex. 1986). Only when an agent has express authorization may he file a claim on behalf of another. *In re Manville Forest Products Corp.,* 89 B.R. 358, 376 (Bankr.S.D.N. Y.1988) *aff'd,* 99 B.R. 543 (Bankr.S.D.N.Y. 1989).

■ It is undisputed that CU only received and filed specific authorization from eight individuals out of a population of ticketholders that may prove to be well in excess of 100,000. These statements only specify the amount for three of these claims in the amount of approximately $6,000. Despite this limited authorization, CU contemplates a reimbursement plan which would mandate compensation in the amount of $20 million. (However, even this $20 million estimate is speculative and the amount to be reimbursed to ticketholders will possibly exceed this amount.) This evidence does not meet Bankruptcy Rule 2019 requirements in that (1) not all ticketholder claimants or creditors have given their express authorization to CU; and (2) even where authorization was given, only three individuals have specified the amount of their claims.

If CU purports to act as an agent on behalf of ticketholders, it needs to show that this general agency relationship is consensual in nature. A fiduciary relationship " 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to [the] control, and consent [of the person] to act.' [It is critical that the] 'agency rela-

tion exists only if there has been a manifestation by the principal to the agent that the agent may act on his account....' " *In re Baldwin–United Corp.,* 52 B.R. 146, 148 (Bankr.S.D.Ohio 1985) (quoting *Restatement of Agency* § 15 (1958)). Absent such consent an agent may not legitimately represent the interests of individuals. CU has specifically enumerated that those who hold less than .05 percent of the claims have authorized CU to represent them, yet CU seeks to represent 99.05 percent of the remainder of the claims. This is clearly not in compliance with the goals of Agency, nor is it in compliance with Bankruptcy Rule 2019.

In *Great Western, supra,* the Court invalidated the argument "that nothing in the Code or the Rules places on them a clear affirmative duty to prove their status as agents for the claimants.... [N]othing in the Code or Rules says that they do not have to show agency. In fact, what little the Rules do say indicates that the initial burden is on the party claiming to be an agent for several claimants." *In re Great Western Cities, Inc.,* 88 B.R. at 112. Bankruptcy Rule 2019 requires that an entity must file an instrument which empowers the entity to act on behalf of the creditors. This includes an executed power of attorney authorizing counsel to file a proof of claim in this case. This rule places the burden on the party seeking agency status for several claimants. *Id.* It is clear that CU has not met this burden and has not produced evidence that multi-thousands of ticketholders have given express authorization for CU to represent them in this matter.

Pursuant to Bankruptcy Rule 2019(b) [2], failure to comply with Bankruptcy Rule 2019 alone can result in this Court refusing to permit that entity to be heard or further intervene in this case and hold invalid any authority given, procured or received by an entity or committee. Since CU has not

---

**2.** Bankruptcy Rule 2019(b), provides in pertinent part as follows:

(b) *Failure to Comply; Effect.* On motion of any party in interest or on its own initiative, the court may

(1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule ..., the court may refuse to permit that entity, committee, or indenture trustee to be heard further or to intervene in the case....

complied with the substantive requirements of Bankruptcy Rule 2019, it is dubious that CU has the power to act on behalf of these eight ticketholders, let alone the entire class of unnamed Ticketholders.

3. *CU does not have a right of intervention pursuant to Bankruptcy Rule 2018 or Federal Rules of Civil Procedure Rule 24(a) or (b).*

A. Permissive Intervention

CU claims that even if it were not a party in interest, the Court should grant CU the right to intervene. In *Public Service of New Hampshire,* Consumer Advocate's and BIA's requests were not granted because the general representation of the public interest and of the rate-payers of New Hampshire was deemed to have been accomplished in the proceeding by the State of New Hampshire under the full party in interest and general intervenor status granted to it by this decision. *Id.,* at 555. CU, in their *Reply Memorandum,* conspicuously omits that *Consumers Advocate* was not given general intervenor status because the consumers were already adequately represented by the State of New Hampshire. Here, CU seeks general intervenor status, just as the State of New Hampshire, however, the status of the State of New Hampshire is entirely distinct from that of CU. The State of New Hampshire has a direct, non-tangential stake in the *Public Service* reorganization proceedings.

Moreover, CU has not established that the interests of ticketholders have not been adequately provided for in this reorganization proceeding.

Bankruptcy Rule 2018 provides for permissive intervention:

In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

Furthermore, Federal Rule of Civil Procedure Rule 24(b) (the "Federal Rules") also provides for permissive intervention:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Court in *Public Service of New Hampshire, supra,* states that Bankruptcy Rule 2018 authorizes a broad and elastic interpretation of those entities entitled to intervenor status. *Id.* at 554. Pursuant to Bankruptcy Rule 2018, "for cause" may be construed as an economic or similar interest in the case or in one aspect of the case. *Id.* Under Federal Rule 24(b), permissive intervention is also given a liberal construction. *In re Charter Co.,* 50 B.R. 57, 63 (Bankr.W.D.Tex.1985). Intervenor status may also be granted where an entity might be concerned with the precedential ramifications of the case. *In re Public Service of New Hampshire,* 88 B.R. at 551.

██ CU may assert that it has an economic or similar interest in the case because its organization is concerned with the rights of consumers; however, the extent to which permissive intervention will be permitted is limited and should not be given if (1) the intervenor's interests are already adequately represented and (2) "intervention would result in undue delay or prejudice to the original parties." *Public Service of New Hampshire,* 88 B.R. at 551; *See also, Kenan v. Federal Deposit Ins. Corp.,* 33 B.R. 348 (Bankr.W.D.Okla.1983); *In re Longfellow Indus., Inc.,* 76 B.R. 338, 341 (Bankr.S.D.N.Y.1987); *In re Hyde Park Partnership,* 73 B.R. 194, 196 (Bankr.N.D.Ohio 1986); *In re Charter Co.,* 50 B.R. at 63–64; *In re Citizens Loan and Thrift,* 7 B.R. 88, 91 (Bankr.N.D.Iowa 1980); *Manufacturers Trust Co. v. Kelby,* 125 F.2d 650, 655 (2d Cir.1942), *cert. denied,* 316 U.S. 697, 62 S.Ct. 1293, 86 L.Ed. 1766 (1942). A court's application of Federal Rule 24(b) is discretionary—*i.e.,* the court may use its own discretion in deter-

mining whether permissive intervention is appropriate for a specific party. *Kenan v. Federal Deposit Ins. Corp.*, 33 B.R. at 350. A court should be discriminating in determining whether permissive intervention is appropriate pursuant to Federal Rule 24(b). *In re Charter Co.*, 50 B.R. at 63. The Court "must consider the potential adverse impact on the original parties in its decision to allow or deny intervention." *Id.*

For example, the Second Circuit in *Manufacturers Trust Co. v. Kelby, supra,* examined whether intervention could possibly result in confusion arising from the presence of too many parties and if there would be prejudice due to the possible increases in allowances and costs. *Manufacturers Trust Co.*, 125 F.2d at 650. While additional parties necessarily require extra time, the Court should balance the delay against the advantages of hearing the claims of the parties seeking intervention. *In re Charter Co.*, 50 B.R. at 63; *see also, Kenan v. Federal Deposit Ins. Corp.*, 33 B.R. at 350. In sum, "the test for whether a party is affected by the proceedings ... must be interpreted in light of this requisite balancing of competing principles." *In re Public Service of New Hampshire*, 88 B.R. at 554.

In the instant case, this Court concludes that permissive intervention is inappropriate, particularly in light of the complexity of the case and the speed in which this case is progressing. As stated by this Court time and time again, this estate is hemorrhaging at a rapid rate. To successfully rehabilitate Eastern, time is of the essence. Allowing CU intervenor status in this large and complex case would inevitably cause unnecessary delay, additional and duplicative expenses, and may prejudice the rights of ticketholders. Additionally, allowing CU to intervene based upon its meager Bankruptcy Rule 2019 authorization platform, is inappropriate because some ticketholders may not want to be represented by CU. As a result, further litigation may occur as these claimants object to CU's representation. Furthermore, this Court would be adding yet another party to a case which already involves perhaps millions of creditors.

Similarly, "decisions concerning intervenor status generally have involved limited intervention as to specific matters, rather than an order granting general intervention." *In re Public Service of New Hampshire*, 88 B.R. at 554. In the present situation, CU is requesting party in interest status as a representative of all consumer ticket holders. Indeed, CU has signaled an intention to appear and be heard in every aspect of the reorganization including timing issues of motions brought by others. Thus far, by its own admission, CU has involved itself in hearings and maintained communication with attorneys for the debtor, Unsecured Creditors' Committees, various creditors, the U.S. Trustee, the Examiner, the Uberroth interests, and the Howard interests. As stated previously, CU has filed a motion to accelerate consideration of the motion to appoint a trustee and has filed comments concerning Eastern's ticket holder reimbursement plan. Such interference has been wasting valuable time in these proceedings particularly in light of the numerous parties already involved.

B. Right of Intervention.

Federal Rule 24(a) provides that:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ The Third Circuit and the Fifth Circuit have established different standards in determining whether a party has an absolute right to intervene. The *Marin* approach of the Third Circuit stands for the proposition that a party in interest has the absolute right to intervene on any issue in a case. *In re Marin Motor Oil, Inc.*, 689

F.2d 445 (3d Cir.1982), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). On the other hand, the *Fuel Oil* approach asserts that section 1109(b) does not give a creditor or creditor's committee an absolute right to intervene; a party's rights under 1109(b) are constricted by Federal Rule 24(a)(2). *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283 (5th Cir.1985). If a party's interests are already adequately protected by the proceedings, then it will not be permitted to intervene. *See also, In re Charter Co.,* 50 B.R. at 61–64; *In re Allegheny Intern., Inc.,* 93 B.R. 903 (Bankr.W.D.Pa. 1988). The Court in *In re Allegheny* was "not overly concerned over the possibility of multifarious intervention, but [remained] concerned about the possibility of delay and additional expense from even one strategic intervenor." *In re Allegheny Intern Inc.,* 93 B.R. at 906. In the absence of construing Federal Rule 24(a) and § 1109(b) of the Code in this manner, "the committee and each individual creditor— perhaps hundreds of them—would be automatic parties to every proceeding connected with the case." *Fuel Oil and Terminaling,* 762 F.2d at 1287.

Regardless of which approach is accepted by this Court, CU does not have a right to intervene for two reasons: (i) As this Court previously held, *supra,* CU has not adequately shown that it is a party in interest, and (ii) even if CU does have a claim against the estate, its interests are already adequately represented by the Examiner and the Unsecured Creditors Committee.

This Court specifically recognized the public interest concerns which are implicated in the case in its Order For The Appointment Of An Examiner dated March 30, 1989. The broad mandate given the Examiner was and is intended to bridge the parochial interest of the various parties to this proceeding. Indeed, from argument on this motion, it is clear that the Examiner and other parties to the proceeding have each given an attentive ear to constructive suggestions by CU.

Furthermore, the Unsecured Creditors' Committee, as appointed by the United States Trustee, is charged with the responsibility of representing the interests of all unsecured creditors, including persons holding unused Eastern tickets, frequent flyer miles, passes, bump tickets, etc.... The Unsecured Creditors' Committee has a fiduciary obligation to represent all unsecured creditors and therefore, CU's argument that it should be given standing because there is no member of the existing Unsecured Creditors' Committee representing the interests of the flying public is without merit.

Moreover, Federal Rule 24(a) similarly does not grant CU the right to intervene. Federal Rule 24(a)(1) states that a person may intervene if "a statute of the United States confers and unconditional right to intervene." This phrase has been narrowly construed and courts have been reluctant to find an unconditional statutory right of intervention absent specific and unequivocal language in a statute. *Fuel Oil and Terminaling,* 762 F.2d at 1286. "The statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federal regulatory commission; private parties are rarely given an unconditional statutory right to intervene." *Id.* (citing C. Wright A. Miller, & M. Kane, *Federal Practice and Procedure, Civil,* § 1906 (1972, Supp.1984). Section 1109(b) of the Code is not generally considered to provide an absolute right to intervene, and as a result, in construing § 1109(b), the court should look to Federal Rule 24 for guidance as to whether intervention is proper. *Fuel Oil and Terminaling,* 762 F.2d at 1286. CU is clearly not an organization appointed by the government, nor is there a similar statute granting CU intervention status in a bankruptcy proceeding. As a result, since ticketholders interests are already adequately represented in these proceeding, and CU is not granted specific intervention status, this Court holds that CU will not be permitted to intervene.

Finally, even if this Court were to find that CU is a party in interest, it is highly dubious that its reimbursement plan could be instituted. It would not appear, that the doctrine of necessity or the business judge-

ment rule would result in the implementation of CU's suggested Procedure. *See, In re Ionosphere Clubs, Inc.,* 98 B.R. 174 (Bankr.S.D.N.Y.1989) (The doctrine of necessity or the necessity of payment rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to make payments on pre-petition debts where such payments are *essential* to the continued operation of the debtor. A movant must show that "there is a necessity to pay [creditors] and not merely that the Debtor has the ability to pay." Thus, a movant would need to demonstrate that payment to a creditor confers a benefit to the estate and not merely to the payee.)

## CONCLUSION

In conclusion, this Court finds that Consumers Union is not a party in interest under § 1109 of the Code nor has it fulfilled Bankruptcy Rule 2019's requirements. Additionally, CU has failed to show that it is entitled to intervenor status. Therefore there is no need for this Court to address the merits of CU's motion.

Submit an order consistent with the foregoing.