**In re BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a the Singer Company, Debtor.**

**Bankruptcy No. 89–8191–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 6, 1990.

Harley Riedel, Tampa, Fla., for debtor.

James Gresser, Washington, D.C., for U.S. Dept. Justice.

Douglas P. McClurg, Tampa, Fla., for CAE Industries.

## ORDER ON MOTION TO INTERVENE

ALEXANDER L. PASKAY, Chief Judge.

One of the most crucial aspects of this Chapter 11 reorganization case is a claim asserted by Christopher Urda (Urda), which was joined later on by the United States of

America (Government). This civil suit styled, "United States of America ex rel. Taxpayers Against Fraud and Christopher Urda v. Link Flight Simulation Corporation, CAE–Link Corporation and Singer Company," Case No. HM–88–3408 (Urda Action), was filed in the United States District Court in Maryland. In that suit the Government sought money damages against the Defendants under the False Claims Act, 31 U.S.C. § 3729(a)(2), for common law fraud, for unjust enrichment, for payment under mistake of fact and for breach of contract. Upon the commencement of this Chapter 11 case, all further proceedings in this civil suit against Bicoastal Corporation, f/k/a The Singer Company (Debtor) came to a halt by virtue of the automatic stay imposed by § 362(a) of the Bankruptcy Code.

In due course the Government filed a proof of claim in this Court which is basically the same claim asserted by the Government in the Urda action pending in Maryland. In light of the fact that the Urda claim is clearly a contingent and unliquidated claim, which cannot be allowed by virtue of § 502(c), it became apparent that the Urda claim would have to be either liquidated in Maryland or estimated in this Court pursuant to § 502(c)(1). On April 20, 1990, the Debtor in fact filed a Motion and sought authority to estimate the Urda claim in this Court. On August 3, 1990, this Court entered an Order and granted the Debtor's Motion and directed that the Urda claim should be estimated. The Order also established the procedural guidelines for handling the "Urda Estimation Proceedings."

The present matter under consideration is a Motion To Intervene in the estimation process pursuant to 11 U.S.C. § 1109(b) and Bankruptcy Rule 2018(a). The Motion is filed by CAE Industries, Ltd. (CAE) and CAE–Link Corporation (CAE–Link), collectively referred to as CAE, the other defendants named in the Urda suit pending in Maryland. It appears that the Urda claim asserted against CAE in the Maryland litigation is based in part on the theory that CAE is liable as successor in interest of the Debtor, and also on an alleged liability independent of CAE under the legal theories outlined earlier.

The successor liability theory is based on the fact that the Debtor sold some of its flight simulator operations, notably the Link Flight operation, to CAE, and as a result of those transactions, the Debtor and CAE entered into a mutual indemnity agreement whereby the parties agreed that whoever is held to be liable, at least in part, to the Government in the Urda litigation, will indemnify and hold harmless the other from the claim established against it by the Government.

It is the contention of CAE that it should be permitted to intervene because 1) any decision in the estimation process by this Court on any legal point might detrimentally impact its interest in the Maryland litigation because the United States District Court, while not accepting any ruling by this Court on legal issues to have a preclusive effect, might give this Court's rulings the force and effect of stare decisis. Second, its interest, so contends CAE, is not adequately represented in the estimation process by the Debtor, therefore, it should be permitted to intervene. Third, to protect its interest, CAE contends that if the Debtor loses in the estimation process and the Urda claim asserted by the Government is allowed in full, the Debtor would have a right, though only in an estimated amount, to enforce the claim against CAE under the indemnification agreement.

The right of intervention sought by CAE is based first on § 1109 of the Bankruptcy Code, Subclause (b) which provides:

§ 1109. **Right to be heard**

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

In the alternative, CAE relies on Bankruptcy Rule 2018(a) which provides:

(a) **Permissive Intervention.** In a case under the Code, after hearing on such notice as the court directs and for cause

shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

Considering this Rule first it is evident that it was designed only to implement the provisions of § 1109. See *Advisory Committee Notes* (1983). The Rule clearly should not be confused with Bankruptcy Rule 7024 which deals with intervention in adversary proceedings. In this connection, it should be pointed out that while it is true that the estimation process is a contested matter and governed by Bankruptcy Rule 9014, which makes certain rules automatically applicable, Bankruptcy Rule 7024 is not among them. This is an important distinction because a right to be heard pursuant to Section 1109 of the Code and Bankruptcy Rule 2018 is one thing and to intervene and thus become an actual party litigant in a contested matter is another. In the latter instance, if intervention is permitted, parties who intervened are treated on par with the litigants already in the lawsuit or in the contested matter with the full right to conduct independent discovery, to present evidence, and to cross-examine witnesses. On the other hand, if the party is merely authorized to be heard, pursuant to § 1109, his involvement in a particular contested matter is limited to the right to present arguments and to submit briefs, but that party has no right to conduct litigation of its own in the orthodox sense as a party litigant.

CAE, in support of its Motion, cites the case of *In re Continental Airlines, Inc.*, 57 B.R. 839 (Bankr.S.D.Tex.1985), and the case of *In re Ionosphere Clubs, Inc. and Eastern Air Lines, Inc.*, 101 B.R. 844 (Bankr.S.D.N.Y.1989). In the case of *Continental*, the party who sought intervention was the Official Non–Union Labor and Pension Committee established pursuant to § 1103 of the Bankruptcy Code. The court permitted the Committee to intervene in a contested matter which involved adjudication of non-union employee claims against the estate. The matter in which the Committee sought to intervene was also a claim originally brought pursuant to § 502(c)(1) of the Bankruptcy Code which included the

debtor's request for the estimation of the total value of the claims. In *Ionosphere Clubs,* the court declined to permit a consumer organization to intervene and held that intervention should not be permitted if it would result in undue delay and prejudice to the original parties.

This Court is satisfied the *Continental* case does not really deal with the problem involved in the present instance. CAE, the party who seeks to intervene, is not an Official Committee established pursuant to § 1103 of the Bankruptcy Code, *cf. Continental Airlines, supra,* but instead has the same legal status as the moving party involved in *Ionosphere Clubs, supra.*

In addition, CAE relies on the case of *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir.1989). In this case, the Eleventh Circuit concluded, construing Fed.R.Civ.P. 24, that the intervenor's interest must be a particularized interest rather than a general grievance by the party seeking to intervene. The court also held that the party seeking to intervene must show that it has an interest relating to the property or transaction which is the subject of the suit; that the lawsuit would, as a practical matter, impede its ability to protect that interest; and that the interest that it is representing is not adequately protected by the original litigant already involved in the suit. Relying on these statements, CAE urges that any ruling by this Court might have a stare decisis effect, therefore it should be permitted to intervene in this contested matter.

This Court, having reviewed the authorities cited in support and in opposition of the Motion, is satisfied that CAE should not be permitted to intervene for the following reasons:

First, this Court seriously doubts that any ruling in an estimation process by this Court would have any force and effect whatsoever on any substantive litigation in Maryland. There is no question that it is, at most, speculative and certainly doubtful that the District Court in Maryland would pay any attention to what occurred in the estimation process before this Court. This is so because one must draw a distinction

between the estimation process of a claim and the adjudication process of the same. There is no question that the estimation of claims in bankruptcy does not establish a binding legal determination of the ultimate validity of a claim nor a binding determination of any issues.

As stated in the case of *In re Nova Real Estate Investment Trust*, 23 B.R. 62 (Bankr.E.D.Va.1982), the process of estimation is not a finding or fixing with the binding legal effect of any amount except for the purpose of reorganization. Moreover, it is nothing more than a court's best estimate for the purpose of permitting the reorganization process to go forward and not cause undue delay which, of course, frequently has a fatal effect on a debtor's effort to achieve reorganization. In this instance, if CAE is permitted to intervene, it would have a right to conduct its own independent discovery and at the final estimation hearing, would have a right to present its own witnesses, present its own independent documentary evidence and cross-examine witnesses. It takes no great imagination to conclude from the foregoing that none of this would be helpful for the speedy resolution of the estimation process; on the contrary, without a doubt it would cause substantial delay.

The next point raised by CAE is based on the contention that its interest is not adequately protected. There is nothing in this particular record to substantiate this contention. The Debtor is more than adequately represented in the estimation process by highly competent counsel, a law firm with almost unlimited resources, and the interests of the Debtor and CAE are clearly identical. There is nothing in this record to indicate that the Debtor would not exert its utmost, if not to defeat, but at least to substantially reduce the claim of the Government. So, to the extent that the claim of the Government against CAE is derivative, it is only based on the fact that CAE is successor in interest of the Debtor. Anything undertaken by the Debtor in this contested matter would equally benefit CAE. As noted earlier, CAE is not prohibited and, on the contrary, is encouraged to furnish any and all assistance it may be able to muster to the Debtor and cooperate fully with counsel for the Debtor whether by furnishing documentary evidence or witnesses, presenting oral argument at the conclusion of the case, or submitting briefs on legal points raised during the estimation process.

The last point raised by CAE is equally without basis. The fact that the Debtor might have the right of indemnification against CAE is a fact of life and a matter of contract, and whether or not intervention is granted or denied would not alter those rights, change in any way, or negatively affect the interest of CAE.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion To Intervene be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that notwithstanding the foregoing, CAE may be heard in this contested matter pursuant to 11 U.S.C. § 1109.

DONE AND ORDERED.