In re D.H. SHARRER & SON, INC., D.H. Sharrer & Son, Inc., d/b/a AG-Services, Debtor.

D.H. SHARRER & SON, INC., D.H. Sharrer & Son, Inc., d/b/a AG-Services, Plaintiff,

v.

SHARRER INVESTMENT TRUST, Defendant.

Bankruptcy No. 5–83–00381.

Adv. No. 5–83–0389.

United States Bankruptcy Court, M.D. Pennsylvania.

Dec. 20, 1984.

Myles R. Wren, Scranton, Pa., for debtor.

John W. Thompson, Jr., York, Pa., for defendant.

Stephen G. Bresset, Honesdale, Pa., Peter F. Baughman, Conshohocken, Pa., for Unsecured Creditors' Committee.

### MEMORANDUM

THOMAS C. GIBBONS, Bankruptcy Judge:

In this adversary proceeding, objections were filed by the Defendant to a Motion by the Unsecured Creditors' Committee to intervene in an adversary proceeding filed by the debtor. The motion, inter alia, alleges that intervention should be permitted as the Movant's claim and the subject proceeding do have questions of both law and fact in common with those pending before the court. Also, that Movant's intervention at

this stage would not unduly delay or prejudice the adjudication of the proceeding; however, denial of the motion would unduly hamper or hinder the interests of the committee and severely prejudice the interests of the committee as substantial discovery has been completed at the request of the creditors' committee. Defendant's objections set forth seven reasons in opposition to the Unsecured Creditors' Committee's motion.

In a case very similar on its facts to that presented here, our Circuit Court in the case of *Marin Motor Oil,* 689 F.2d 445 (1982) decided that an unsecured creditors' committee has the absolute right to intervene in such a situation. The Unsecured Creditors' Committee filed a complaint by which it sought to include related companies in the proceedings. When, pursuant to stipulation, the committee withdrew its complaint, the trustee instituted adversary proceedings to include the related companies. (This occurred in a Chapter 11 proceeding). The unsecured creditors' committee sought to intervene in the proceeding on the ground that § 1109(b) gave it an absolute right to do so. The Bankruptcy Court, holding that § 1109(b) was permissive, denied the motion to intervene and granted the committee amicus curiae status. The District Court reversed, concluding § 1109(b) to be mandatory.

In an opening statement of his opinion, Judge Adams had the following to say:

"We are called upon in this appeal to determine whether a creditors' committee in a bankruptcy reorganization has the right to intervene in adversary proceedings instituted by a trustee. We first decide that we have jurisdiction under 28 U.S.C. § 1293(b) to address this issue at this stage of the litigation, and then proceed to ascertain that under the applicable section of the Bankruptcy Code, 11 U.S.C. § 1109(b), a creditors' committee has a right to intervene, a right that is not satisfied by participation as a mere amicus curiae. Accordingly, we affirm the order of the district court granting intervention."

On page 449 of *Marin,* supra, we find the following:

### III.

#### A.

"[2] Having established that there is jurisdiction, we next consider the merits of the dispute. The language of the statute would seem clearly to favor the position espoused by the Committee:

'A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.'

11 U.S.C. § 1109(b). The words 'this chapter' in section 1109(b) denote Chapter 11 of the Bankruptcy Code, the Chapter which deals specifically with reorganizations. It is important to bear this in mind since some of the confusion in this proceeding has arisen from a failure to recognize that Congress intended a creditors' committee to have more extensive rights in a reorganization than in a liquidation.

Appellants do not deny that section 1109(b) provides an absolute right of intervention to a creditors' committee in a Chapter 11 'case.' Their position is based instead on a narrow interpretation of the term 'case.' Under their reading a 'case' would not encompass the 'adversary proceedings' connected with it. Neither the term 'case' nor the term 'adversary proceeding' is defined by the Bankruptcy Code; indeed, the Code makes no explicit mention of 'adversary proceedings.' The term 'adversary proceeding' is, however, defined by Bankruptcy Rules 701:

The Rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. · Such a proceeding shall be known as an adversary proceeding.

Most litigated matters in a bankruptcy case are adversary proceedings, *see* Trost, *Trial Practice Under the New Bankruptcy Rules*, 47 Am.Bankr.L.J. 111, 112 (1973); consequently the appellants' proposed reading of section 1109(b) would drastically restrict the rights of parties to appear and be heard.

The precise scope of the term 'adversary proceeding' is of little significance here, since it is conceded that the two actions in which the Committee seeks to intervene are adversary proceedings. The crucial issue is whether we should read 'case' to exclude adversary proceedings. Appellants would have us believe that 'case' refers 'to the general administration of a Chapter 11 proceeding leading up to the confirmation of a plan of reorganization by the Bankruptcy court.' Appellants Brief at 15. We find no reason to adopt this crabbed definition. Appellants point to the fact that under 11 U.S.C. § 301, a voluntary case is commenced by the filing of a petition, whereas under Bankruptcy Rule 703, an adversary proceeding is commenced by the filing of a complaint. This simply proves, however, that an adversary proceeding is commenced in a different manner from the case with which it is connected; no one has ever questioned this. The courts and commentators appear to be universally opposed to appellants' construction of a 'case.' As 2 Collier on Bankruptcy ¶ 301.03 (15th ed. 1982) explains, 'case' is 'the widest term functionally' and other terms 'designate steps within the case.' Colliers' definition was adopted in *In re Sapolin Paints, Inc.*, (2 C.B.C.2d 854) 6 B.R. 582, 583 (Bankr.E.D. N.Y.1980). *See also* the Advisory Committee's Note to Rule 101, according to which a 'proceeding' is generally a litigated matter in a 'case.'

Attention is also called to the exact language of section 1109(b), which grants a right to appear and be heard not in 'a case' but 'on any issue in a case.' It is unlikely that Congress would have used such sweeping language if it had not meant 'case' to be a broadly inclusive term. Congress' failure specifically to mention adversary proceedings in section 1109(b) is hardly surprising, given that Congress did not specifically mention adversary proceedings anywhere in the Bankruptcy Code. Indeed, for all Congress knew, the Bankruptcy Rules that ultimately would be adopted under the Bankruptcy Reform Act of 1978 might render the expression 'adversary proceedings' obsolete by utilizing some new designation or designations for litigated matters in bankruptcy.

#### B.

Any doubt about the meaning of the language of section 1109(b) would appear to be dispelled by the legislative history, which states that section 1109(b)

> '[p]rovides, *in unqualified terms*, that any creditor, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest under this chapter in person, by an attorney, or by a committee. It is derived from section 206 of chapter X (11 U.S.C. 606).'

S.REP. NO. 95–989, 95th Cong., 2nd Sess. 116 (1978), *reprinted in* 1978 U.S. CODE CONG. & AD.NEWS 5787, 5902

(emphasis added). Section 1109(b) was of course passed as a very small part of the major overhaul of the bankruptcy laws embodied in the Bankruptcy Reform Act of 1978.

It would be a strained construction to read this 'unqualified' right as being limited to participation in the general administrative aspects of cases. More importantly, the derivation of section 1109(b) from section 206 of Chapter X suggests that Congress had no intention of upsetting the long line of section 206 cases granting a broad, absolute right to appear and be heard. Section 206 had provided that '[t]he debtor, the indenture trustee, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter.' Chapter X Bankruptcy Rule 10–210(a), which according to the Advisory Committee Note to the Rule was derived from section 206, provided that:

'(1) The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a Chapter X case.

'(2) A labor union or employees' association, representative of employees of the debtor, shall have the right to be heard on the economic soundness of a plan affecting the interests of the employees.'

13A Collier Bankruptcy ¶ 10–210.02 (14th ed. 1977), remarks, on the relation between Rule 10–210(a)(1) and section 206, that '[t]he slightly altered language does not affect [sic] any change in the statute.' Congress' obvious borrowing in section 1109(b) from the language of Rule 10–210(a) is further evidence that Congress intended for there to be no sharp break between section 206 and section 1109(b)."

The objector attempts to distinguish the *Marin* case, supra, by suggesting that dissatisfaction is a precondition to intervention. Actually, at page 447, the *Marin* court had the following to say:

"Although the Committee's supporting affidavit contained serious complaints [generally described by the Court] about the Trustee's handling of the proceedings, the Committee based its Motion almost entirely on the claim that section 1109(b) accorded it an absolute right to intervene regardless of the Trustee's performance."

While the factual recitation *mentions* the dissatisfaction, absolutely nowhere does the opinion condition the right to intervene on such a precondition. Other efforts to distinguish *Marin*, supra, are likewise unpersuasive.

We find, therefore, that the objections are entirely without merit and must be dismissed. Accordingly, we enter the following order.