**In re Carl H. NEUMAN, Debtor.**

**Bankruptcy No. 84 B 11704 (PBA).**

United States Bankruptcy Court,
S.D. New York.

July 24, 1987.

Parker & Duryee by Lola S. Lea, New York City, for debtor.

Garrity, Connolly, Lewis, Lowry, Grimes & Silverman by William R. Grimes and James Garrity, New York City, for James Garrity, Chapter 11 trustee.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Nancy Kilson, New York City, for the U.S.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for the Dept. of Health.

MEMORANDUM DECISION DENYING DEBTOR'S APPLICATION FOR ORDER DIVESTING THE CHAPTER 11 TRUSTEE OF CONTROL OF THE SARAH NEUMAN NURSING HOME

PRUDENCE B. ABRAM, Bankruptcy Judge:

Carl H. Neuman ("Neuman" or "Debtor"), a licensed physician, filed a Chapter 11 petition on December 11, 1984. Neuman continued as a debtor in possession until March, 1986, when the court directed the U.S. Trustee to appoint a Chapter 11 Trustee. By order signed March 18, 1986, this court approved the selection of James Garrity as Trustee ("Garrity" or "Trustee") and further

> "ORDERED, that the trustee shall have all of the powers of a trustee under 11 U.S.C. 1106(a) and the authority to operate any of the debtor's business pursuant to 11 U.S.C. 1108."

In August, 1986, the Trustee initiated the proceedings which have led to the present dispute. The Trustee sought an order ousting Edward Leffler ("Leffler") from the Sarah R. Neuman Nursing Home and Pavilion ("SRN") in Mamaroneck, New York on the grounds that SRN was the property of the Debtor's estate and that the Trustee had the right and obligation to manage it.

Leffler had entered into an agreement with Neuman a few months before the

Chapter 11 petition was filed under which Leffler purportedly purchased SRN, subject to reversion if he did not obtain certain approvals from the New York State Department of Health ("DOH") required for the transfer on or before September 30, 1986. Neuman's position throughout the Chapter 11 had been that the transfer to Leffler of SRN was a "fait accompli."

In August, 1986, it became apparent that no transfer of SRN to Leffler could have occurred prior to obtaining the required State approvals which had not then been obtained. It therefore appeared to this court that the Trustee should be placed in a position where he could at least monitor the operations of SRN as Leffler was simply a contract vendee in possession who had certain potential proprietary and managerial rights. Thus, this court signed an order on August 22, 1986, giving the Trustee and Leffler joint control over SRN.

After the Trustee sought relief from the bankruptcy court and in mid-August, 1986, Neuman and Leffler commenced an action in state court against the Trustee seeking a declaration that the Trustee was not entitled to operate SRN. This court enjoined that action, determining that Neuman's dispute with the Trustee over what was property of the estate should be determined in the bankruptcy court.

After lengthy hearings and in September, 1986, this court found that Leffler would not be able to obtain the required approvals and terminated Leffler's rights to SRN by orders dated October 2 and October 20, 1986. Leffler did not appeal from that determination.

Related appeals were taken from this court's orders dated August 22, October 2 and October 20, 1986. The district court vacated the October 20 order and vacated the August 22 order in part and remanded the remaining matter on the appeals from the August 22 order to this court. The effect of the orders vacated by the district court was to recognize that Leffler had no further possessory or managerial rights in SRN and leave the Trustee in sole possession of SRN. The district court stated the issues remanded to be determined by this court to be (a) whether the Trustee is authorized under New York Public Health Law § 2810 to operate SRN; and (b) whether Neuman has any continuing rights under the operating certificate he has for SRN.

The Debtor has made a motion seeking to have this court decide the remanded issues. All parties have submitted briefs and affidavits and oral argument was heard.

DOH presently recognizes Garrity's right to operate SRN. By letter dated August 13, 1986, the Department of Health advised Garrity that it would view his appointment as trustee as analogous to the appointment of a receiver pursuant to Public Health Law § 2810. More recently, by letter dated April 2, 1987, the Department of Health stated that it had completed review of Garrity's application as potential receiver and found him acceptable as a receiver under the provisions of the New York State Public Health Law.

On the remand, DOH has taken the position that the bankruptcy court does not have jurisdiction to authorize a trustee to take over the day to day operation of a nursing home as the regulation of a nursing home is an exercise of the State's policy power and the bankruptcy court must not interfere with the State's regulatory requirements relative to health and welfare. There is no provision in the New York Public Health Law which specifically addresses bankruptcy trustees. DOH suggests that the bankruptcy court could protect the debtor's estate without having the trustee assume operational control over the daily functioning of the nursing home. The bankruptcy trustee could have financial control and the State should control the individual selected to operate the nursing home.

The State has an important regulatory interest in the operator of a nursing home. The scandals involving nursing home operations in New York are well-known. This court has previously acknowledged the State's controlling interest in the operation of nursing homes. See *In re Lawson Burich Association, Inc.*, 59 B.R. 681 (Bankr. S.D.N.Y.1986) (Court declined to rule on

issues relating to nursing home receivership agreement with State.) Here, the Trustee did not attempt to obtain an order from this court giving him operating control of SRN until he had secured State approval. As it happens, Garrity was selected as trustee in this case because he had previously operated a nursing home as a bankruptcy trustee with State approval.

In a regulated business such as a nursing home, the trustee will generally have to deal with and satisfy state requirements in order to be permitted to operate. See 28 U.S.C. § 959(a) and (b). Since the trustee appointed here is satisfactory to the State, there is no conflict in fact between the rights of the State and the power of the bankruptcy court in this case and this court need not further consider the point.

This court's August 22, 1986, order was not directed at the Trustee's rights vis-a-vis the State as is evident by the fact that DOH was not a party to the appeal from the order. Rather, the dispute was over the Trustee's rights vis-a-vis those of Leffler and of the Debtor. The Debtor had been content to allow Leffler to run SRN and had been out of possession of SRN since before the Chapter 11 petition was filed. Once the Trustee challenged Leffler's position, the Debtor objected to the Trustee taking over the operation of SRN because the Debtor was protective of Leffler, a long time and close business associate, and because the Debtor thought the Trustee unfit to run SRN as the high-class and well-run nursing home it is.[1]

▆ The Debtor's position is that the Trustee cannot run SRN because the operating certificate is in Neuman's name and cannot be suspended or taken away except

in a proceeding commenced in accordance with the statutory scheme set out in the Public Health Law. It is undisputed that no proceeding has been commenced by DOH against Neuman to terminate or suspend his operator's license.

The Debtor's argument fails to deal with the Bankruptcy Code. The Trustee's superior claim to operate SRN flows directly from the March 18 order of appointment of the Trustee, from which no appeal was taken.[2] When Neuman was ousted as debtor in possession, the Trustee was authorized to operate the Debtor's business as permitted by Code § 1108.

The Bankruptcy Code in Code § 521(3) requires Neuman as the debtor to

"cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under [the Bankruptcy Code]."

Among the duties of the Chapter 11 trustee is the duty to operate the debtor's business, if so ordered. Here the Trustee has been ordered to operate the Debtor's business, which includes SRN. Neuman must therefore cooperate with the Trustee to permit the Trustee to operate SRN.

A Chapter 11 trustee may use Code § 542(a) to secure turnover of property of the estate from an entity in possession, custody or control. Entity, a defined term, includes a debtor. See Code § 101(14), (35) and (12). Thus, this Debtor is obligated to turnover property of the estate to the Trustee. The definition of property of the estate is broad and includes all legal and equitable interests of the debtor in property as of the commencement of the case, see Code § 541(a)(1), as well as the proceeds, product, rents or profits of or from proper-

---

1. There is absolutely no suggestion that either the Debtor or Leffler ran SRN in an unsafe or unsanitary fashion. Nor do Neuman's financial problems relate to the operations or SRN, which is an apparently solvent and profitable operation. The Debtor's financial problems stem from the operation of two unrelated proprietary hospitals, one of which closed a few years before the petition was filed and the other of which closed post-petition but before the Trustee was appointed.

2. Since at that time Neuman was not operating SRN as Leffler was, it might not have been

apparent that the March 18 order affected SRN. The appeal of argument is superficial for two reasons. First it became apparent in September, 1986, that neither the Debtor nor Leffler could have failed to understand that no transfer of SRN had yet occurred. Secondly, even though no longer able to appeal the March 18 order, the Debtor still has the right as a party in interest to request the court to terminate the Trustee's appointment and restore the Debtor to possession and management of the property of the estate and of the operation of the Debtor's business. See Code § 1105.

ty of the estate "except such as are earnings from services performed by an individual debtor after the commencement of the case", see Code § 541(a)(6). The revenues from the operation of SRN are within the definition of property of the estate as they are not earnings from personal services performed by Neuman post-petition. Such revenues are not among the property which an individual debtor may claim as exempt property. See Code § 522(b) and New York Debtor & Creditor Law § 282.

It is simply unnecessary and irrelevant to determine whether Neuman's operating license is property of the estate since it is agreed by all that it could not be transferred by the Trustee even if it were. Although the court remains of the view it expressed in August, 1986, that there is a conceptual distinction in the nature of the bankruptcy property interests in Neuman's license as a physician and as the operator of SRN that distinction is better expressed in terms of the Trustee's right to the SRN revenues in reliance on Code § 541(a)(6) than in terms of the operating license itself. The Ninth Circuit in *In re Fitzsimmons*, 725 F.2d 1208 (9th Cir.1984), affirming and remanding 20 B.R. 237 (B.A.P. 9th Cir.1982), extensively considered the interrelationship of Code § 1108 and § 541(a)(6) in the case of an attorney operating his law practice as a sole proprietorship. The Chapter 11 trustee argued that Code § 1108 overrode Code § 541(a)(6) and therefore all of the revenues were property of the estate to which he was entitled. The debtor argued that all of the revenues were within the Code § 541(a)(6) exemption as earnings from his personal services. The Ninth Circuit struck a middle course:

"Although we hold that the earnings exception of § 541(a)(6) does apply to Chapter 11 cases, [the debtor] Fitzsimmons overstates the effect of that exception. Once again, consideration of the provisions of Chapter 11 of the Bankruptcy Code aids us in arriving at our construction of § 541(a)(6). * * * [W]e hold that § 541(a)(6) excepts from the proceeds of the estate only those earnings generated by services personally performed by the individual debtor. Fitzsimmons is thus entitled to monies generated by his law practice only to the extent that they are attributable to personal services that he himself performs. To the extent that the law practice's earnings are attributable not to Fitzsimmons' personal services but to the business' invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like, the earnings of the law practice accrue to the estate." 725 F.2d at 1211.

Neuman makes no claim that the revenues of SRN are the earnings of services personally performed by him post-petition. They are the product of the business' invested capital, accounts receivable and good will.

Once the Debtor came into the bankruptcy court he no longer had the unfettered right to do as he wished with his assets. In effect, when the Debtor incurred indebtedness beyond his ability to repay, he "sold" his assets to his creditors. When the Trustee was appointed, the Debtor lost control over his assets, including SRN, to the Trustee. That is the nature of the bankruptcy process.

It is in this fashion that the court answers the two intertwined questions put to it.

It is so ordered.