In re Carl NEUMAN, d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company, Debtor.

SARAH R. NEUMAN FOUNDATION, INC., Plaintiff,

v.

James GARRITY, Trustee, Defendant

and

United States of America, Intervenor.

James GARRITY, Trustee, Plaintiff,

v.

SARAH R. NEUMAN FOUNDATION, INC., et al., Defendants.

James GARRITY, Trustee, Plaintiff,

v.

HOSPITAL CONSULTANTS, INC., et al., Defendants.

Bankruptcy No. 84–B–11704.
Adv. Nos. 86–5856A, 86–5851A and 88–5210A.

United States Bankruptcy Court, S.D. New York.

Aug. 21, 1989.

Katz, Kleinbaum, Farber & Karson by Eugene I. Farber, White Plains, N.Y., for debtor and Certain Other Entities.

Graubard, Mollen, Dannett & Horowitz, New York City, for Edward Leffler and Certain Other Entities.

Benito Romano, U.S. Atty. S.D.N.Y. by Nancy Kilson, New York City.

Zalkin, Rodin & Goodman by Menanchem Zelmanowitz, New York City, for Chapter 11 Trustee.

Platzer, Fineberg & Swergold, New York City, for Creditors' Committee.

Morris Ehrlich, New York City.

## MEMORANDUM DECISION GRANTING MOTION TO VACATE ORDER OF INTERVENTION

PRUDENCE B. ABRAM, Bankruptcy Judge:

In order that all entities be remanded to the roles assigned to them by the Bankruptcy Code, it is necessary that this court vacate one of its prior orders entered in these adversary proceedings. By order dated January 29, 1987 (the "Intervention Order") this court allowed the United States of America (the "Government") to intervene as a party in the two of these three related adversary proceedings that were commenced in 1986. The third adversary proceeding was not commenced until 1988 and the Government has been participating in it although no formal order of intervention has been entered. The Government has no interest in the outcome of any of these adversary proceedings except the interest that all creditors of this Chapter 11 estate share: the interest in

obtaining the maximum recovery possible so that there will be an estate that the Chapter 11 Trustee can distribute.

The motion to vacate the Intervention Order and preclude intervention in the third adversary proceeding was made by the debtor, Carl Neuman ("Neuman" or the "Debtor"), his wife and a number of related corporations, including the Sarah R. Neuman Foundation ("Foundation"), all of whom are parties in one or more of these adversary proceedings. The motion has been supported by Edward Leffler ("Leffler") and a number of affiliated corporations, who are also parties in two of these adversary proceedings. The Government opposes the motion as does the Chapter 11 Trustee, James Garrity (the "Chapter 11 Trustee").

## STATEMENT OF FACTS

The facts need be stated only briefly. From the time the Chapter 11 petition was filed in December 1984 until March 1986, the Debtor acted as Debtor in Possession and there was an active creditors' committee. In March of 1986, this court directed the appointment of a Chapter 11 trustee and the creditors' committee became inactive. At the time of the Chapter 11 Trustee's appointment, Leffler was operating the Sarah R. Neuman Nursing Home and Pavilion (the "Home") under claim of right as owner or contract vendee in possession pursuant to a pre-petition contract with the Debtor for the acquisition of the Home. Although the Debtor had sought court approval of the agreement with Leffler early in the case, no resolution of the Debtor's application had occurred before the Chapter 11 Trustee was appointed. A number of months after his appointment, the Chapter 11 Trustee took steps that resulted in litigation over Leffler's rights to the Home. That litigation ended with the Chapter 11 Trustee taking over the operation of the Home.[1]

These adversary proceedings concern, *inter alia*, the validity and enforceability of certain leases for and mortgages on the Home. Familiarity with the prior decisions [2] in these adversary proceedings [3] and the case will be presumed.

The claims of the Government do not arise out of the operation of the Home and are unrelated to the substantive allegations in these three adversary proceedings. At the present time, the Government appears to be the single largest creditor of the estate. The bulk of the Government's claims are the result of alleged overpayments to the Debtor under the Medicare provider agreement for the Lydia Hall Hospital (the "Hospital") which the Debtor

1. There are four reported decisions on the litigation over the Chapter 11 Trustee's right to operate the Home. The first is *In re Neuman*, 67 B.R. 99 (S.D.N.Y.1986) (Sweet, D.J.). The District Court remanded appeals relative to the dispute among the Chapter 11 Trustee, the Debtor and Leffler over the right to operate the Home to the Bankruptcy Court for it to determine whether the Chapter 11 Trustee was authorized under New York Public Health Law Sec. 2810 to operate the Home and whether the Debtor had any continuing rights under the certificate of operation for the Home. On reconsideration, the District Court affirmed its prior remand and upheld the Bankruptcy Court's injunction against the Debtor's state court litigation with the Trustee over the certificate of operation. See *In re Neuman (Garrity, Trustee v. Leffler and Neuman)*, 71 B.R. 567 (S.D.N.Y.1987) (Sweet, D.J.). On remand, the court found that the Debtor was obligated by the Bankruptcy Code to cooperate with the Chapter 11 Trustee to permit the Trustee to operate the Home and that since the New York

State Department of Health acquiesced, the Trustee was entitled to operate the Home. See *In re Neuman*, 75 B.R. 966 (Bankr.S.D.N.Y. 1987). In *In re Neuman*, 88 B.R. 30 (S.D.N. Y.1988) (Sweet, D.J.), the District Court affirmed the Bankruptcy Court's decision.

2. See Footnotes 1, 3 and 4.

3. In *In re Neuman (Sarah R. Neuman Foundation, Inc. v. Garrity, Trustee*, 81 B.R. 796 (D.C.S. D.N.Y.1988) (Cannella, D.J.), the District Court stayed this court's order fixing the monthly rental for the Home at $103,000 and remanded the matter back to this court for a determination as to the fair and reasonable rental due to Foundation. In a related matter, this court in *In re Neuman*, 92 B.R. 598 (Bankr.S.D.N.Y.1988) denied the motion of the Bank of New York, the holder of three mortgages on the Home, to join the Chapter 11 Trustee as a party to the Bank's foreclosure action against Foundation on the Home. That decision is presently on appeal.

owned and operated until October 1985.[4] The Government asserts that its multi-million dollar pre-petition claim became an expense of administration by virtue of court approval of a December 21, 1984 stipulation which allowed the Debtor in Possession to assume the Hospital provider agreement as an executory contract. The Government has also asserted other significant administration claims. The Government must receive payment in full on its allowed administration claims before any distribution is made to prepetition creditors. The size of this estate is such that little might remain for unsecured creditors if the Government is an administration creditor to the maximum amount it claims. Thus, although the Chapter 11 Trustee is a fiduciary for the benefit of all creditors, de facto the only significant beneficiary of his endeavors may be the Government, if the status or amount of its claims cannot be successfully challenged.

Following a two day hearing in late July, this court approved the Chapter 11 Trustee's request to settle these adversary proceedings as they relate to the Debtor, his wife, Foundation and a number of corporate entities related to the Debtor. The Government objected to the proposed settlement as did the Bank of New York.[5] The Chapter 11 Trustee's settlement agreement provides for Foundation to convey title to the Home, subject to the Bank of New York mortgages, to the Trustee in exchange for a payment by the Trustee to Foundation of $1.2 million. There are additional terms that include a sharing by Foundation in a portion of net proceeds over $10 million from the sale of the Home and provide a right for the Chapter 11 Trustee to acquire an interest in a nursing home in Texas related to the Debtor. The parties are also to exchange releases. The court also granted the Chapter 11 Trustee's request to enjoin continuation of a foreclosure action brought by the Bank of New York against Foundation on the Home.

■ The settlement does not moot the motion to vacate the intervention order as it does not finally dispose of these adversary proceedings in their entirety. Moreover, the Government has indicated its intention to appeal the approval of the settlement so that its status in these adversary proceedings remains relevant.

## ISSUE PRESENTED

Does a pre-petition unsecured creditor or an administration creditor have either an absolute or a conditional right to intervene in an adversary proceeding commenced by a Chapter 11 Trustee as a result of Bankruptcy Code § 1109(b) or otherwise?

## DISCUSSION

■ This court concludes that neither Bankruptcy Code § 1109(b) or any other provision of the Bankruptcy Code gives a pre-petition unsecured creditor or an administration creditor in a Chapter 11 case either an absolute or a conditional right to intervene in an adversary proceeding commenced by a Chapter 11 Trustee.[6] Thus,

---

4. The prior litigation between the Debtor in Possession and the Government over payments to the Hospital is detailed in *In re Neuman (Neuman v. Blue Cross/Blue Shield of Greater New York)*, 55 B.R. 702 (S.D.N.Y.1985) (Carter, D.J.). The District Court reversed an order of this court which had required the Medicare administrator to make additional payments to the Debtor in Possession rather than permit Medicare to make additional recoupment of pre-petition overpayments. The District Court also found that the Debtor in Possession was entitled to no further Medicare payments until post-petition overpayments it stated to be about $1 million were satisfied. At the same time the District Court remanded to the Bankruptcy Court for its consideration the motions of Chase Lincoln First Bank, N.A., the holder of a first mortgage on the Hospital, seeking to intervene in the adversary proceeding and to set aside the December 21, 1984 stipulation. As an ironic aside, it can be noted that the Government opposed the motion of Chase Lincoln to intervene in that adversary proceeding.

5. The objection of the Government went to the overall fairness of the settlement. That of the Bank of New York went to certain terms of the settlement which affected its mortgages.

6. As the issue before this court is limited to the right to intervene in an adversary proceeding, this opinion does not consider the meaning and effect of Code Sec. 1109(b) in the nonadversary proceeding context. See, e.g., *In re Barrick Group, Inc.*, 98 B.R. 133 (Bankr.D.Conn.1989).

the Court's prior order allowing the Government, whose only basis of standing is as a pre-petition or an administration creditor, to intervene was erroneous and should be vacated.

This court views the issue as one which implicates broad issues of bankruptcy policy. In its present role as an intervenor in these adversary proceedings, the Government, in its capacity as a creditor, is but a pseudo-party since no judgment could ever be rendered for or against it as no relief for or against the Government is sought. As the practice of allowing intervention in adversary proceedings by pseudo-parties is on the rise and can impose delays as well as substantial additional expense on the estate for counsel fees, it is important that the intellectual underpinning of the practice be reviewed. As happened in this case, allowing intervention often appears to be an easy way to bring in additional counsel who can better conduct the litigation. Compare *In re Longfellow Industries Inc. (Longfellow Industries, Inc. v. Blumberg)*, 76 B.R. 338 (Bankr.S.D.N.Y.1987). Lawyer incompetence or unwillingness to take on an economic burden in the face of uncertain prospects is an insufficient basis for unsettling the basic structure of the Bankruptcy Code.

The Government asserts that it has an absolute right under Federal Rule of Civil Procedure ("FRCP") 24(a), as made applicable by Bankruptcy Rule 7024, to intervene in these adversary proceedings. FRCP 24, which contains provisions for permissive intervention as well as for intervention as of right, provides as follows:

"(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

"(b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

It is the position of the Government that Bankruptcy Code Sec. 1109(b) is a statute of the United States that confers an unconditional right to intervene as that phrase is used in FRCP 24(a)(1). Code Sec. 1109(b) reads as follows:

"(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

There is a split of authority between the Third and Fifth Circuits on whether Code Sec. 1109(b) provides a basis for a mandatory right for a creditors' committee[7] to intervene in an adversary proceeding commenced by a debtor in possession. The Third Circuit in *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3rd Cir.1982), *cert denied* 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983) held that Code Sec. 1109(b) provides an unqualified right to appear and be heard in adversary proceedings as well as in the general administrative aspects of the case. The Third Circuit rejected the statutory construction argument that the use of the word "case" in Code Sec. 1109(b) should be read to mean

---

**7.** Many of the intervention cases involve creditors' committees and not individual creditors. As will become evident, nothing in this court's analysis of the interplay between FRCP 24 and Code Sec. 1109(b) turns on the distinction. It should be noted that there is a potentially significant difference between allowing a fiduciary, such as a creditors' committee, and a non-fiduciary, such an individual creditor, to intervene.

intervention was limited to appearing in the case proper and did not extend a right to intervene in adversary proceedings within the case. In its view, the language of Code Sec. 1109(b) seemed "clearly to require that more than mere participation as an amicus [in an adversary proceeding] be allowed." 689 F.2d at 454. The *Marin* court opined that its broad and absolute construction of Code Sec. 1109(b) comports with

> "the usual expectation of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests. This expectation has its roots in notions of due process and fair play, even though there is no allegation here that denial of a right of intervention to the Committee would itself violate due process. We are especially reluctant to adopt the extremely strained interpretation of Section 1109(b) proposed by appellants when to do so would frustrate this expectation of participation." 689 F.2d at 457.

A number of cases have followed *Marin* or cited it with approval. See, e.g., *In re Overmeyer*, 30 B.R. 123 (Bankr.S.D.N.Y. 1983); *In re D.H. Sharrer & Son, Inc.*, 44 B.R. 976 (Bankr.M.D.Pa.1984); and *In re Longfellow Industries, Inc.*, 76 B.R. 338 (Bankr.S.D.N.Y.1987); and *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655 (Bankr.E.D.N.Y.1988).

One recent case has concluded that *Marin* is no longer good law on the grounds that it was decided before the adoption of the present Bankruptcy Rules. See *In re Allegheny International, Inc.*, 93 B.R. 903 (Bankr.W.D.Pa.1988). Accord, *In re Charter Co.*, 50 B.R. 57 (Bankr.W.D.Tex.1985). In the *Allegheny* court's view, the adoption of Bankruptcy Rules 2018 and 7024 with their Advisory Committee Notes made plain that Code Sec. 1109(b) is inapplicable to the interpretation of Bankruptcy Rule 7024 and FRCP 24. This rationale is unconvincing because present Bankruptcy

Rule 7024 is virtually identical to former Bankruptcy Rule 724, which was applicable at the time *Marin* was decided, and because it elevates procedural rules over statutory provisions. If *Marin* is correct that Code Sec. 1109(b) grants an absolute statutory right of intervention, it would be a substantive right that could not be taken away by a mere procedural rule. See *In re Hanover Industrial Machine Co.*, 61 B.R. 551 (Bankr.E.D.Pa.1986).

The Fifth Circuit in *Fuel Oil Supply and Terminaling (The Official Creditors Committee v. Gulf Oil Corporation*, 762 F.2d 1283 (1985) declined to follow *Marin* and held that the creditors' committee had no absolute statutory right to intervene in a bankruptcy adversary proceeding.[8] The Fifth Circuit found the strength of the argument that Code Sec. 1109(b) creates an absolute right of intervention to lose much of its force when the section was juxtaposed with the procedural rules governing intervention. The Fifth Circuit concluded

> "We are convinced that Congress must have intended courts to apply Rule 24(a)(2) rather that Rule 24(a)(1) to applications to intervene in bankruptcy adversary proceedings under Sec. 1109(b). This approach allows any party in interest with a stake in the outcome of the adversary proceeding to intervene in that proceeding as of right. This broad right to intervene is consistent with the expansive right to be heard created by Sec. 1109(b). At the same time, however, the bankruptcy court is permitted to control the proceeding by restricting intervention to those persons whose interests in the outcome of the proceeding are not already adequately represented by existing parties. * * * [W]e hold that the district court correctly ruled that the Creditors Committee has no absolute statutory right to intervene." 762 F.2d at 1287.

---

**8.** As the Fifth Circuit put it

"Because of the limited scope of Rule 24(a)(1) and the distinctions Congress has drawn between bankruptcy 'cases' and related 'proceedings,' therefore, we conclude that Congress did not create an absolute statutory right to

intervene in bankruptcy adversary proceedings through § 1109(b)." 762 F.2d at 1287. See also the excellent discussion of this point in *In re George Rodman, Inc.*, 33 B.R. 348 (Bankr. W.D.Okla.1983).

This court finds the analysis in both *Marin* and *Fuel Oil* to be flawed. The analysis in *Marin* turns on finding Code Sec. 1109(b) to be a statute of the United States conferring an unconditional right to intervene. This court in accord with the analysis in *Fuel Oil* rejecting this construction for the reasons given in *Fuel Oil* as well as on the basis of lack of harmony with the statutory scheme of the Bankruptcy Code, as discussed *infra*. The analysis in *Fuel Oil*, on the other hand, presupposes that all creditors have an interest in the property or transaction that is the subject of the adversary proceeding sufficient to be a basis for mandatory intervention since only if that were so would FRCP 24(a)(2) be an available basis for intervention. This supposition is erroneous and has been rejected in pre-Code bankruptcy cases. Nor is it in accordance with non-bankruptcy cases dealing with the nature of the interest required by FRCP 24(a)(2).

In *Kheel v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.*, 45 F.R.D. 281 (S.D.N.Y.1968), the District Court denied a motion by five injured longshoremen to intervene in an action for a declaratory judgment brought by the trustees in bankruptcy against the bankrupt's insurer seeking construction of a maritime insurance policy. The trustees sought to determine whether they could pursue certain methods of satisfying policy provisions requiring payment of a $1,000 deductible per accident as a pre-condition to being indemnified for further liability for an accident. The proposed intervenors asserted that their interests would not be adequately represented by the trustees because (1) the trustees were adverse parties in the personal injury suits brought against the bankrupt; (2) the trustees had no real interest in the prosecution of the action since the intervenors were the only persons who stood to benefit from the prosecution of the action by the trustees; and (3) prosecution of the action would, because of the expenses involved, diminish other creditors' share in an estate which was already insufficient to pay creditors' claims in full. The proposed intervenors asserted that they would be seriously prejudiced if the trustees did not prosecute the action. The trustees joined in the motion asserting that they could not afford to prosecute proceedings undertaken solely for the benefit of the proposed intervenors.

Despite these appealing arguments, the district court correctly denied the intervention motion, finding that the movants failed to reveal a sufficient "interest" in the action or an inadequacy of representation to warrant granting intervention as a matter of right under FRCP 24(a)(2). The court also found that permissive intervention would be inappropriate under FRCP 24(b)(2) unless the movants could make a better showing of the existence of common questions of fact and law or of their own ability to make a more adequate presentation of the legal and factual questions involved.

"There is no indication that the Trustees, who are officers of the Court sworn to collect and protect the assets of the debtor's estate for the benefit of the creditors, will fail to prosecute the instant action diligently. Assuming arguendo a decision by the Court that the Trustees may recover the proceeds of the policies, either with or without advance payment of claims for personal injuries or of $1,000 with respect to each such claim, no evidence is offered to show that the recovery would, as a matter of law, inure to the exclusive benefit of personal injury claimants, including movants, as distinguished from all other general creditors of the estate. Furthermore, although the Trustees state that the movants have no right of direct action against defendant (see, e.g., § 167, New York State Insurance Law), movants take no position themselves on this question. If such a right of direct action existed, of course, the entire present proceeding might be avoided." 45 F.R.D. at 281.

The District Court in *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (S.D.N.Y.1974), affirmed without opinion *sub nom Shulman v. Goldman, Sachs & Co.*, 515 F.2d. 505 (1975), denied a motion by the defendant's insurer to inter-

vene in litigation in which the plaintiff sought payment of commercial paper from the seller defendant because of the issuer's insolvency. In looking to the nature of the interest required under FRCP 24(a)(2), the court found that intervention as of right presupposes that the applicant has a right to maintain a claim for the relief sought.

"A party has standing to prosecute a suit in the federal courts only if he is the 'real party in interest' as that term is defined under Fed.R.Civ.Pro. 17(a). The stricture applies to intervenors as well as plaintiffs. The authorities agree, moreover, that a party has no standing to assert a right if it is not his own. Furthermore the interest sought to be enforced must be 'a present, substantial interest as distinguished from a contingent interest or mere expectancy.' " 62 F.R.D. 341.

See also *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) ("What is obviously meant by [Rule 24(a)(2) ] is a significantly protectable interest."); and *Crown Financial Corporation v. Winthrop Lawrence Corporation*, 531 F.2d 76 (2d Cir.1976) (Purchaser of land subject to judgment lien from debtor's receiver has no interest in underlying action in which judgment against the debtor was secured and intervention denied).

■ The subject matter of these adversary proceedings is the various claims of fraudulent transfer and the like the Chapter 11 Trustee has made against the various defendants. The interest of the Government is in the size of the estate and its right to a distributive share in the estate. These are not the subject matter of these adversary proceedings. Even on a best case basis, the interest claimed by the Government is no more than a remote or contingent interest in the outcome of these proceedings. Compare *Restor–A–Dent Dental Laboratories, Inc. v. Certified Al-*

*loy Products, Inc.*, 725 F.2d 871 (2nd Cir. 1984) (insurer of defendant does not have interest in action for damages for breach of contract so as to permit intervention.) Thus, this court rejects the analysis found in such cases as *In re Sapolin Paints, Inc.*, 6 B.R. 582, 584 (Bankr.E.D.N.Y.1980) and *In re Charter Co., supra*, 50 B.R. at 62–3, that permitted intervention by a creditor on the grounds that an adverse judgment would diminish the assets available for distribution to creditors.[9]

■ Nor is it sufficient for intervention under FRCP 24(a)(2) that an interest relating to the subject matter of the litigation be shown. Intervention will be denied if the proposed intervenor's interest is adequately represented by existing parties. In this court's view, creditors must be deemed adequately represented by the Chapter 11 trustee as a matter of statutory fiat.

■ FRCP 17(a), which requires that every action be prosecuted in the name of the real party in interest, is applicable in an adversary proceeding. See Bankruptcy Rule 7017. Creditors have only a contingent interest in the outcome of an adversary proceeding. They do not qualify as a real party in interest. A creditors' committee qualifies as a real party in interest when it is authorized to conduct a litigation in the event of unwarranted inaction by the debtor in possession. See, e.g., *In re STN Enterprises (Unsecured Creditors' Committee v. Noyes)*, 779 F.2d 901 (2nd Cir. 1988); and *In re Monsour Medical Center (Committee of Unsecured Creditors v. Monsour Medical Center)*, 5 B.R. 715 (B.C. W.D.Pa.1980).

■ The Government would fare no better if this court were to consider the possibility of permissive intervention under FRCP 24(b). Code § 1109(b) is no more susceptible of being considered a statute

---

**9.** The *Sapolin* court found it unnecessary to determine whether the creditor was entitled to intervene as of right or only as of grace since the court concluded that it would permit intervention as a matter of discretion under FRCP 24(b) even if it were not satisfied that Code § 1109(b) conferred an unconditional right to intervene. Why the court referred to FRCP 24(b) is unclear. Intervention under FRCP 24(b)(1) would require interpreting Code § 1109(b) to be a statute granting a conditional right to intervene; under FRCP 24(b)(2), common questions of fact or law must exist. The *Sapolin* court's analysis of interest seems to refer to FRCP 24(a)(2), which is a mandatory, not a permissive, intervention provision.

that confers a conditional right to intervene within the meaning of FRCP 24(b)(1) than it is to be considered one conferring an absolute right. As to FRCP 24(b)(2), there is no common question of law or fact between the adversary proceedings and the Government's pre-petition and administration claims or right to a distributive share in this Chapter 11 case.

In this court's view much of the discussion in the cases on this issue presented in this case fails to give careful consideration to the nature of a bankruptcy case or other provisions of the Bankruptcy Code. A harmonious construction must be sought so that Code Sec. 1109(b) does not predominate or override other statutory sections. A bankruptcy case is an in rem proceeding. It can be viewed as a form of class action with the class consisting of all holders of claims and interests in the debtor.[10] In a Chapter 7 liquidation case, the Bankruptcy Code directs that the trustee collect the estate, reduce it to cash and distribute it in accordance with the statutorily prescribed distribution scheme. A Chapter 11 reorganization case is no less an in rem proceeding even though there is no statutory mandate that the debtor in possession, or trustee, if one is appointed, convert the assets to cash. In a Chapter 11 case, the fundamental issue still remains how the res or its value will be distributed among the various classes of claimants. The Chapter 11 debtor in possession has the rights and powers of a trustee. See Bankruptcy Code Sec. 1107(a). A Chapter 11 trustee takes his or her duties from Code Sec. 1106. The trustee, whether in Chapter 7 or in Chapter 11, is the designated representative of the estate and has capacity to sue and be sued. See Bankruptcy Code Sec. 323(a) and (b). The trustee can initiate suits against third parties in state or federal court as well as by adversary proceeding in the bankruptcy court.

None of the cases, including *Marin* and *Fuel Supply*, consider the right of the creditors' committee or individual creditors to intervene in litigation being conducted by the trustee outside of the bankruptcy court. If Code Sec. 1109(b) confers standing on a creditors' committee or individual creditor to intervene in an adversary proceeding in the bankruptcy court, it is difficult to see how the standing would be limited to matters before the bankruptcy court itself. Allowing pseudo-parties to intervene on the basis of Bankruptcy Code Sec. 1109(b) in nonbankruptcy court litigation initiated by a trustee or debtor in possession could produce complete chaos in the administration of the estate as the nonbankruptcy forum cannot be expected to have a clear understanding of the roles assigned the various parties by the Bankruptcy Code.

The power to conduct the suit is plainly compromised by allowing intervention because the intervenor affects the course of the litigation through its participation. In many cases the intervenor makes a positive contribution to the litigation. The issue is, of course, not whether the intervenor is helpful or harmful in a particular adversary proceeding. The issue is whether the intervenor's presence compromises the statutorily given authority of the debtor in possession or trustee to control the conduct of the litigation. Perhaps nothing after the decision to sue is as fundamental as the decision to compromise and settle the litigation. A fiduciary prefers to compromise litigation if acceptable terms can be agreed upon. In that way the estate is not exposed to the risk of complete loss.

In none of the cases is there any discussion on how allowing intervention by creditors or creditors' committees would impact on the trustee's or debtor in possession's ability to propose to dispose of the litigation through settlement. It is apparent to this court that the early procedural posture of the various cases in which intervention has been discussed simply caused the courts to fail to consider the mechanics of

---

**10.** The class action analogy is hardly unique to this court. For example, in *In re W.T. Grant Co.,* 699 F.2d 599 (1983), the Second Circuit referenced to its earlier class action suit, *Newman v. Stein,* 464 F.2d 689 (1972) in discussing the standards to be applied by the bankruptcy court in approving a compromise and settlement. Cf., Note, Strategic Bankruptcies: Class Actions, Classification and the *Dalkon Shield Cases,* 7 Cardozo L.Rev. 817 (Spring 1986).

the end game. Considering the matter from the end rather than the beginning puts, in this court's view, a sufficiently different perspective on the question that allowing intervention except in the rarest of circumstances becomes unwise.

Compromises are a normal part of the process of reorganization. In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts. See *Protective Committee of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). Intervention by a creditors' committee or a creditor as a party in an adversary proceeding interferes with the trustee's power to propose a compromise and settlement of the litigation.

The *Marin* court's concern over frustrated expectations of participation if intervention in an adversary proceeding is denied is misplaced. The responsibility for safeguarding the estate's assets, including its lawsuits, rests on the Chapter 11 debtor in possession or trustee, who are fiduciaries designated by the Bankruptcy Code. Both the creditors' committee and individual creditors have rights of participation and oversight in a bankruptcy case which are spelled out in the Bankruptcy Code and Rules. For example, they have a right to notice of any proposed compromise and settlement. See Bankruptcy Rule 2002(a). The purpose of providing notice to creditors is to afford creditors the opportunity to review the compromise and settlement and to object to it if they find it unsatisfactory. The standards that the court must follow in determining whether to approve a compromise and settlement [11] of a lawsuit by a trustee have been set forth in a number of decisions, including those of the Second Circuit. See, e.g., *In re W.T. Grant Co., supra*, 699 F.2d 599 (1983). The court must review the proposed compromise and settlement in light of the legal issues presented in the litigation and of the factual predicates and of any objections raised by creditors to the proposed settlement. The process of approval is committed to the court's sound discretion to be exercised with the best interests of the estate and creditors in mind. "[I]t is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court." *Protective Committee of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. at 424, 88 S.Ct. at 1163.

The Government has taken a number of appeals from orders entered in this case.[12] Its positions on appeal have not been identical to those of the Chapter 11 Trustee. To the extent that they are different, they undermine the authority of the Trustee as the fiduciary responsible for making decisions about the conduct of litigation and impose expense upon the estate for its participation.

· If a creditor or a creditor's committee is so dissatisfied with the performance of a trustee or the trustee's counsel that the

---

**11.** The result of a compromise and settlement of any lawsuit, whether in the bankruptcy court or elsewhere, is a consent judgment. A consent judgment is a judgment that is based on a contract. "A consent judgment is a contract to end a lawsuit in which the relief to be provided by the judgment and the wording to effectuate that relief are agreed to by the parties." *Interspace Incorporated v. Morris*, 650 F.Supp. 107, 109 (S.D.N.Y.1986) (citing *Janus Films v. Miller*, 801 F.2d 578, 582–83 (2nd Cir.1986). Because it is based on a contract, it cannot be entered against any party who does not consent to it. "[T]he voluntary nature of a consent decree is its most fundamental characteristic." *Local Number 93, International Association of Firefighters, AFL–CIO, C.L.C. v. City of Cleveland, et al.*, 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed 2d 405 (1986). See generally *In re Ross (General American Corp. v.*

*Merrill Lynch Commodities, Inc.)*, 64 B.R. 829 (Bankr.S.D.1986). The court can enter judgment for or against a non-consenting party only after trial or decision on a dispositive motion.

**12.** The early litigation over the reimbursement payments occurred in an adversary proceeding in which the Government was a party because relief directly against it was sought. There can be no doubt that the Government had an appealable interest because the orders directly affected the pecuniary interest of the Government. However, when the Government's interest reverted to that of any other creditor in the simple size of the estate, no one focussed on the difference. That type of pecuniary interest is identical to that held by all creditors of the estate.

creditor or committee feels the need to be actively assisting the trustee in the conduct of a major litigation in order to ensure its proper pursuit, that dissatisfaction should be dealt with head-on in a motion to have the trustee removed or directed to retain new counsel. It should be the court's role to reinforce the trustee's Bankruptcy Code-granted authority and fiduciary responsibility for the management of the estate and not to weaken it through multiple interventions.

This court finds it unnecessary to consider any of the other grounds alleged to be a basis to vacate the intervention order.

For the foregoing reasons, this court vacates the Intervention Order and precludes intervention in the 1988 adversary proceeding. This Court will continue to welcome the Government's views in these adversary proceedings as an amicus curiae.

It is so ordered.